IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DEONTE JAMES**, <br> *Plaintiff*, <br> v. <br> **CUYAHOGA COUNTY**, et al. <br> *Defendants*. | Case No. 1:21-cv-1958 <br><br> Judge J. Philip Calabrese <br><br> Magistrate Judge Jonathan D. Greenberg |
| **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT CUYAHOGA COUNTY TO PRODUCE USE-OF-FORCE VIDEOS AND REMOVE CONFIDENTIALITY DESIGNATIONS FROM PUBLIC RECORDS** | |

**INTRODUCTION**

With this motion to compel, Plaintiff Deonte James respectfully asks the Court to compel Defendant Cuyahoga County to (1) produce use-of-force videos responsive to Plaintiff's Requests for Production Nos. 1 and 5, and (2) remove the confidentiality designations from the public-record incident reports produced as CC000955–7488 and the public-record videos produced November 16, 2022.

**FACTS**

On November 24, 2021, Plaintiff propounded nine requests for production of documents to Cuyahoga County. Ex. 1. Requests Nos. 1 and 5 sought the following:

> **Request No. 1:** All documents related to the use of force by any corrections officer against any inmate housed in the Jail's Mental Health Unit from October 19, 2017 to October 27, 2019. Production should specifically include video footage from surveillance and body-worn cameras and written reports of such incidents.
>
> **Request No. 5:** All documents related to the use of force against restrained inmates from October 19, 2017 to October 27, 2019. Production should include video footage from surveillance and body-worn cameras and written reports of such incidents.

Page **1** of 15

Ex. 1, ¶¶4–6; Exs. 1-A–1-C. At the case-management conference on December 28, 2021, counsel mutually agreed to extend the time for the County to object and respond to Requests 1–8 until January 31, 2022, which would permit Plaintiff time to review the records before the February 7, 2022 status conference. Docket entry, Dec. 28, 2021.

The County never requested or moved for another extension, yet did not provide objections until after the extension expired, on February 1, 2022—and only after prompting from Plaintiff. Ex. 1, ¶7; Ex. 1-D. The late objections advised that Plaintiff's counsel should make arrangements to review the records at the Justice Center. Ex. 1, ¶9; Ex. 1-F. Plaintiff asked to review the records before the February 7 status conference but was refused. Ex. 1, ¶¶10–12; Exs. 1-G–1-I. The County made partial productions before eventually requiring Plaintiff's counsel to review paper copies of reports the County made available onsite at the Justice Center in April and May 2022 and select reports for production . Ex. 1, ¶13; Ex. 1-J. The County finished producing the incident reports on May 10, 2022. Ex. 1, ¶14; Ex. 1-K.

The County advised that it would initially produce the incident reports subject to the Protective Order, ECF No. 11, to avoid spending time reviewing to redact medical records or Social Security Numbers. Ex. 1, ¶15; Ex. 1-L. Plaintiff agreed, with the proviso that counsel would later determine which reports, if any, were subject to the Order. Ex. 1, ¶¶16–18; Exs. 1-M–1-0. The productions included more than 450 reports of incidents involving the use of force against individuals who were already restrained or involving the use of force against individuals housed in the Jail's Mental Health unit. Ex. 1, ¶49.

Plaintiff requested the video production multiple times. Ex. 1, ¶¶19–27; Exs. 1-P–

1-X. On May 10, 2022, in response to one such request, the County advised that it would "take a lot of time and effort" to gather and produce the videos because "[p]rior to the system [the County has] now, the videos were *not* organized and labeled in a uniform fashion." Ex. 1, ¶28; Ex. 1-Y (emphasis original). The County asked the undersigned to "identify your top priority incidents and we can go from there." *Id*. Plaintiff honored this request and, on May 19, 2022, sent a letter identifying 60 of the 450 incidents for which Plaintiff requested a first-round video production. Ex. 1, ¶29; Ex. 1-Z. At the June 6, 2022 status conference, Plaintiff informed the Court of this May 19 request, and the County advised the Court that it needed approximately 60 days to produce these videos. The Court instructed the parties to continue with this *Monell* discovery. The County did not produce any videos between June 6 and November 16, 2022. Ex. 1, ¶50.

On October 3, 2022, Plaintiff sent correspondence to the County regarding the discovery disputes that are the subject of this motion: (1) the County's failure to produce *any* of the videos responsive to Requests Nos. 1 and 5, and (2) the County's improper designation of the use-of-force reports as subject to the Protective Order, despite the fact that the reports are public records. Ex. 1, ¶¶30–31; Exs. 1-AA, 1-BB. Plaintiff requested an initial conferral on these issues following the mediation if it was unsuccessful. *Id*. Mediation was unsuccessful, and counsel eventually conferred telephonically on October 17, 2022. Ex. 2, ¶52. The County did not agree to produce videos (including for the 60 incidents outlined in the May 19, 2022 letter), and the County did not agree to remove the confidentiality designations from the reports. *Id*. Plaintiff advised the Court that the parties had two discovery disputes to discuss at the October 19, 2022 post-mediation

status conference. Ex. 1, ¶32, Ex. 1-CC.

On October 19, 2022, before the status conference, the County filed a motion to bifurcate discovery and trial. *See* ECF No. 17. The Court deferred decision on the two discovery disputes and ordered the County to supplement the bifurcation motion with a declaration stating, in part, "the effort and expense in producing discovery relating to Plaintiff's *Monell* claims" and "whether the County has maintained the 60 videos … that Plaintiff identified." ECF No. 18.

On October 28, 2022, the County avoided submitting the sworn declaration by withdrawing its bifurcation motion. ECF No. 19. After the County withdrew its motion, Plaintiff asked the County five times whether its positions on the discovery disputes had changed since the conferral and, receiving no answer, requested a status conference. Ex. 1, ¶¶33–42, 53; Exs. 1-DD–1-JJ. Plaintiff requested the County's position on the disputes for a sixth time at 8:30 a.m. on November 14, 2022, but the County did not respond. Ex. 1, ¶¶43–44; Ex. 1-KK. At the November 14 conference, the Court authorized Plaintiff to file the present motion to compel. *See* ECF No. 20.

## LAW AND ARGUMENT

**I. The Court should order Cuyahoga County to produce the videos for the 60 incidents identified in Plaintiff's counsel's May 19, 2022 letter.**

### A. The County waived any objections to production.

A party has 30 days to serve objections to requests for production of documents under Fed. R. Civ. P. 34(b). If the party has not secured an extension of time, failure to object within 30 days "operates as a waiver of all objections a party might have." *Cleveland [Guar]dians Baseball Co. v. United States*, Case No. 96-cv-2240, 1998 WL 180623, *4 (N.D.

Ohio Jan. 28, 1998). Whether the untimely objection is legitimate "is of little or no consequence," and "[t]his rule applies with equal force to all objections." *Id*.

A court may excuse a party's waiver upon a showing of good cause. *In re Cont'l Capital Inv. Servs., Inc.*, Case No. 09-3322, 2011 WL 4624678, *2 (N.D. Ohio Sep. 30, 2011). A court may also decline to compel production, despite waiver of objections, if "the discovery appears to have absolutely no relevance to the subject matter of the suit or is otherwise improper." *Cooey v. Strickland*, 269 F.R.D. 643, 648 (S.D. Ohio, Aug. 16, 2010) (citation omitted). But a court may properly find waiver where the party offers no explanation for its untimely objections. *United States ex rel. Doyle v. Diversified Collection Servs., Inc.*, Case No. 2:04-cv-0053, 2006 WL 8442133, *2 (S.D. Ohio Mar. 29, 2006).

Here, the County offered no explanation for its late objections. The requests—seeking use-of-force videos within a two-year period for force against people in the mental-health unit or restrained people—are relevant and material to Plaintiff's *Monell* claims. On the basis of waiver alone, the Court may decline to consider the belated objections and enter an order compelling production. But, even with the objections, the County has failed to articulate any valid basis for withholding this relevant and material *Monell* evidence, as detailed below.

> **B.** **Plaintiff's Requests Nos. 1 and 5 seek discoverable evidence to support his municipal-liability claims.**

A party seeking production responses may move to compel. Fed. R. Civ. P. 37(a)(3)(B)(iv). The movant bears the initial burden of establishing that the information or documents sought are discoverable. Fed. R. Civ. P. 26(b); *White v. City of Cleveland*, 417

F. Supp. 3d 896, 902 (N.D. Ohio Oct. 25, 2019). After the movant makes this showing, the burden shifts to the party from whom discovery is sought to prove that the information or documents are irrelevant, disproportionate to the needs of the case, or overly burdensome to produce. *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015).

The videos are discoverable. The scope of discovery is "quite broad." *Lewis v. ACB Bus. Serv. Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Rule 26(b) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." To assess proportionality, the Court may consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

**1.    The requested videos are relevant to Mr. James's municipal-liability claims against Cuyahoga County.**

Federal Rule of Evidence 401 "sets an extremely low bar" for relevancy. *In re Ford Motor Co. Spark Plug and 3-Valve Engine Prods. Liab. Litig.*, 98 F. Supp. 3d 919, 922 (N.D. Ohio 2014) (citation omitted). Evidence is relevant if it has "any tendency to make a fact more or less probable." Fed. R. Evid. 401. Information exchanged in discovery "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

The requested videos are relevant to Mr. James's 42 U.S.C. § 1983 municipal-liability claims against Cuyahoga County based on the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which imposes "rigorous standards of

culpability and causation." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 405 (1997). Mr. James claims that the County has customs of using excessive force against inmates with mental illness and using excessive force against restrained inmates. ECF No. 1, ¶¶425–34, 445–51 (Claims 4 and 6). He also alleges that Cuyahoga County is liable for failing to train. *Id*. at ¶¶435–44 (Claim 5).

To prove a municipal custom rising to the level of official policy, a plaintiff must present evidence of "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To prove a custom of tolerating unconstitutional conduct, a plaintiff must show a pattern of similar incidents. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013), *overruled on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (citations omitted). To prove a failure-to-train claim, a plaintiff must usually show prior incidents establishing that the municipality "was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citation omitted)).[1]

At the November 14, 2022 status conference, the County suggested (for the first time) that the videos listed in the May 19, 2022 letter are not relevant based on perceived factual distinctions between the specific uses of force against Mr. James and those

---

[1] Although *Canton v. Harris*, 489 U.S. 378, 389 (1989), allows for the *possibility* that a plaintiff need not show prior incidents when the "highly predictable consequence" of a failure to train would cause constitutional-rights violations, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to prove failure to train. *Connick*, 563 U.S. at 62 (citing *Brown*, 520 U.S. at 409).

depicted on these videos. Such an argument is unavailing. As the Sixth Circuit recently explained regarding *Monell* evidence: "No caselaw within our circuit requires the production of evidence of almost identical conduct[.]" *Simpkins v. Boyd Cty. Fiscal Court*, 48 F.4th 440, 457 (6th Cir. 2022).

In *Simpkins*, the plaintiff alleged "an assault involving tightened straps around [his] neck." *Id*. As *Monell* evidence, the plaintiff presented a Department of Justice report detailing prior incidents in which the facts were different: in one, officers beat an inmate to death in a restraint chair; in others, officers used the chairs to expose inmates' genitals. *Id*. The Sixth Circuit held that incidents involving "the use of a restraint chair as corporal punishment without any penological justification" were "the precise mistreatment Simpkins alleges he suffered" and thus "similar enough to constitute a 'policy' within the meaning of *Monell*." *Id*. The same is true here, where any method of using force against people in the mental-health unit or against restrained people would be similar enough constitute a policy or custom.

It bears emphasis that, as the court stated in *Estate of Olsen v. Fairfield City School District*, Case No. 1:15-cv-787, 2019 WL 13043736, *1 (S.D. Ohio Sep. 29, 2019), "[t]his is discovery, not trial, and the Court may revisit the issue of relevance by way of pretrial motions *in limine*." During discovery, "[p]laintiffs may seek and test the relevancy of any such information." *Id*. In *Estate of Olsen*, the plaintiff alleged that a school district had a custom of tolerating student bullying. *Id*. The court granted a motion to compel the district to produce—over the district's relevance objections—records regarding other students allegedly bullied. *Id*. Mr. James has requested videos corresponding to incident

reports within two discrete categories of the use of force over a two-year span. The requests seek sufficiently relevant evidence for *Monell* discovery.

### 2. Requests Nos. 1 and 5 are proportional to the needs of the case.

Mr. James's requests (and his first-round video request of May 19, 2022) are proportional to the needs of his *Monell* claims under all factors relevant to Fed. R. Civ. P. 26(b). The importance of the issues at stake in this action—whether and how often the County Jail's corrections officers used excessive force against people in the County's custody (1) with mental illness or (2) who were already restrained from moving—are significant not only to Mr. James but to the community at large, supporting an order compelling production.

The parties' relative access to relevant information and the parties' resources also favor compelling disclosure. Only the County has access to the videos. And the County has more resources than Mr. James, who is indigent and incarcerated. Evidence of prior incidents is vital for Mr. James to prove his *Monell* claims—and to avoid summary judgment. *See, inter alia, Payne v. Sevier Cty.*, 681 F. App'x 443, 447 (6th Cir. 2017) (affirming summary judgment because five prior incidents were not sufficient to prove custom); *Siler v. Webber*, 443 F. App'x 50, 54 (6th Cir. 2011) (affirming summary judgment because plaintiffs offered no evidence showing a pattern of constitutional violations). Mr. James needs this evidence to litigate his case against the County.

To demonstrate undue burden, the County "must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *In re Heparin Prods. Liab. Litig.*, 273 F.R.D.

399, 410 (N.D. Ohio 2011) (citation omitted). While it is appropriate for a court to limit the scope of discovery "when compliance 'would prove *unduly* burdensome,'" no limitation is justified if compliance would be "merely expensive or time-consuming." *Siriano v. Goodman Mfg. Co., L.P.*, Case No. 2:14-cv-1131, 2015 WL 8259548, *5 (S.D. Ohio Dec. 9, 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)) (emphasis original).

The County has provided *no* evidence regarding the burden, expense, or time required to respond to this discovery. Tellingly, the County withdrew its motion to bifurcate rather than file such evidence into the record—and was then able to produce videos for 14 incidents within two days of the Court's November 14 order. As to the supposed "burden" of producing videos, the County has offered only statements of counsel to support its untimely objections. *See* ECF No. 17, pp. 2, 5–6. But a "mere statement" that a request is "overly broad, burdensome, oppressive, and irrelevant is not adequate to voice a successful objection." *In re Heparin Prods.*, 273 F.R.D. at 410, citing *Kafele* at *2.

The court in *Heparin Products* held to this rule, deeming a defendant's "mechanical repetition" of objections without evidence "not proper" and granting the plaintiffs' motion to compel. *Id*. at 410–11. Similarly, the court in in *Burris v. Dodds* granted a motion to compel where the municipal defendant failed to present specific evidence regarding the alleged burden. Case No. 2:19-cv-815, 2019 WL 6251340 (S.D. Ohio Nov. 22, 2019). There, a pretrial detainee claimed jail employees were deliberately indifferent to serious medical needs posed by alcohol withdrawal and requested medical records of other

inmates with withdrawal symptoms. *Id*. at *1–2. That county objected that the request was unduly burdensome because of the need to manually review an unspecified number of records but provided no evidence of the time and expense required. *Id*. at *5. Finding that the burden posed by the relevant requests "is not 'undue' and does not outweigh Plaintiff's demonstrated need for the discovery to prove her municipal liability claim[,]" the court ordered that county to respond. *Id*.

Mr. James's requests are "sufficiently tailored to discover evidence relevant to [his] claims." *Marcum v. Scioto Cty., Ohio*, Case No. 1:10-cv-790, 2012 WL 2018523, *6 (S.D. Ohio Jun. 5, 2012) (granting plaintiff's motion to compel county to produce other inmates' medical records to prove *Monell* claim). As in *Burris*, the *Marcum* court recognized that responding to *Monell* discovery "is a potentially burdensome process, however, the burden is not 'undue' and does not outweigh plaintiff's demonstrated need for the discovery to prove [his] municipal[-]liability claim." *Id*.

Even considering statements of counsel, the County's only explanation for the alleged burden is that its many videos documenting use of force are not well-organized. As an initial matter, the County's disorganization was not caused by Mr. James's requests—it was caused by the County itself. These videos are public records that, "upon request by any person," must be "promptly prepared and made available for inspection" under Ohio's Public Records Act. Ohio Rev. Code § 149.43(B)(1). To "facilitate broader access to public records," the County must "organize and maintain public records in a manner that they can be made available for inspection or copying." Ohio Rev. Code § 149.43(B)(2). Plaintiff's requests seek videos that the County should have organized and

maintained to facilitate prompt access. The County's failure to honor its statutory obligations does not excuse it from complying with discovery.

Given the civil and criminal proceedings surrounding the Cuyahoga County Jail over the past five years, it is troubling that the County has failed to organize and maintain this public-record evidence to facilitate litigation production:

> Since 2018, more than twelve detainees have died at the Cuyahoga County jail, numerous others have suffered serious injury, conditions remain deplorable, and significant litigation continues in State and federal court to determine the legal consequences and responsibility, if any, relating to maladministration of the jail.

*Brack v. Budish*, --- F. Supp. 3d ---, 2022 WL 1192784, * 1 (N.D. Ohio Apr. 21, 2022). If the County does not have ready access to the evidence documenting the crucible of misery that is the County Jail, or has failed to preserve this evidence for discovery and trial, Plaintiff has serious concerns about spoliation of *Monell* evidence.

Likewise, any claimed burden based on the significant volume of responsive use-of-force videos was not caused by Mr. James, but is a function of the County permitting its corrections staff to use force against restrained detainees and against detainees with diminished mental capacity (without deescalating), both of which are unconstitutional. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004); *Martin v. City of Broadview Heights*, 712 F.3d 951, 962 (6th Cir. 2013). These are the precise unconstitutional policies that Mr. James alleges caused him harm. Producing the massive amount of evidence in its possession that supports Mr. James's *Monell* claims is not an undue burden on the County. That burden is fully and completely due.

As are the video productions. Mr. James requested the videos on November 24, 2021. The Court should order production. If any of the evidence has been destroyed, the Court should order the County to explain how and why that destruction occurred.

**II.     The Court should compel the County to remove the confidentiality designations from the reports produced as CC000955–7488 and videos produced November 16, 2022.**

The County has designated the incident reports produced as CC000955–7488 and the video recordings of 14 incidents produced November 16, 2022 as confidential under the Stipulated Protective Order, ECF No. 11. Mr. James seeks the ability to freely use these records as exhibits, e.g., in support of or in opposition to dispositive motions, without the burdens imposed by the Order.

The Order permits parties to designate documents "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" based on "a good faith determination that the documents contain information protected from disclosure by statute or that should be protected from disclosure as confidential personal information, medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial information that is not publicly available." *Id.*, ¶ 3. Immediately following this description, the Order states: **"Public records and other information or documents that are not publicly available may not be designated as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**." *Id.* (Emphasis added.) The Order "shall be strictly construed in favor of public disclosure and open proceedings whenever possible." *Id.*, ¶ 1.

The incident reports, and the videos produced November 16, 2022, are public records under the meaning of the Order and Ohio Rev. Code § 149.43(A)(1) and thus

improperly designated as confidential. Indeed, the County produced several of the incident reports and videos relevant to this lawsuit as public records. Ex. 1, ¶¶45–48; Ex. 2, ¶¶4–7; Exs. 2-A, 2-B. The Public Records Act contains a list of records exempted from the definition of "public record," and no exemption applies here. Ohio Rev. Code § 149.43(A)(1). The reports and videos are not "medical records." § 149.43(A)(1)(a). To the extent they contain "personal information," as defined in § 149.43(A)(1)(dd) (*e.g.*, SSNs), or nudity, § 149.43(A)(1)(h), the records may be redacted.

The County has *never* offered legal authority supporting its refusal to withdraw the confidentiality designations. Nor has the County agreed to remove some designations or make redactions. Instead, the County has maintained its position that a blanket designation for all incident reports is appropriate. At the November 14, 2022 status conference, the County's counsel referred to Ohio Rev. Code § 149.43 generally and expressed that the reports and videos could embarrass individuals depicted. But § 149.43 contains no exemption for "embarrassing" information, and no superseding law deems "embarrassing" information confidential. In keeping with the Act's purpose of promoting government accountability, the exemptions do not apply to videos depicting violence by peace officers. *See* Ohio Rev. Code § 149.43(A)(17)(b) and (d). No other law removes these reports and videos from the sphere of public records or subjects them to the Protective Order. The Court should order the designations removed.

**III.   The Court should award Plaintiff reasonable expenses, including attorneys' fees, incurred in making this motion as authorized by Fed. R. Civ. P. 37(a)(5).**

If the Court grants this motion in whole or in part, Plaintiff respectfully requests that the Court order Cuyahoga County to pay his reasonable expenses incurred in making this motion, including attorneys' fees, as required by Fed. R. Civ. P. 37(a)(5).

## CONCLUSION

Plaintiff Deonte James respectfully requests that the Court enter an order compelling Defendant Cuyahoga County to: (1) Produce the videos identified in the May 19, 2022 letter or an explanation for why the videos do not exist, within a time deemed reasonable by the Court and (2) Remove the confidentiality designations and provide appropriate redactions to CC000955–7488 and videos produced November 16, 2022 within a reasonable time. Plaintiff also requests a status conference 30 days after the ordered production to set a schedule for any additional video productions.

Dated: November 22, 2022         Respectfully submitted,

/s/ Jessica S. Savoie
Ashlie Case Sletvold (0079477)
Jessica S. Savoie (0099330)
**PEIFFER, WOLF, CARR, KANE
 CONWAY & WISE, LLP**
6370 SOM Center Road, Suite 108
Cleveland, Ohio 44139
(216) 589-9280
asletvold@peifferwolf.com
jsavoie@peifferwolf.com

*Counsel for Plaintiff Deonte James*