## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DEONTE JAMES, | ) | Case No. 1:21-cv-01958 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| CUYAHOGA COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

In this lawsuit alleging unconstitutional use of force in two incidents while Plaintiff Deonte James was detained in the Cuyahoga County jail, two discovery disputes have arisen. First, Plaintiff served discovery requests seeking incident reports of similar uses of force during the two years before the events at issue. Defendant Cuyahoga County identified some 450 incidents, and Plaintiff requested video footage of them. The County produced some, but not all, of those videos, and Plaintiff now moves to compel. Second, the County designated the incident reports and videos produced confidential under the protective order in this case. Plaintiff seeks an order removing those designations on the ground that the materials at issue are public records under State law. For the reasons that follow, the Court **GRANTS** Plaintiff's motion to compel.

## FACTUAL AND PROCEDURAL BACKGROUND

This discovery dispute arises against the backdrop of the following allegations and positions of the parties set out in the pleadings and record before the Court. At

this stage of the proceedings, the Court has no view on the factual or legal merit of any party's claims or defenses, and this discussion of the background should not be taken as anything other than a summary of the record at this point in time as it bears on a discovery dispute.

### A.    Detention at the County Jail

This civil-rights action arises from two events that allegedly occurred during the detention of Plaintiff Deonte James in the Cuyahoga County jail in October 2019. According to the complaint, on October 18, 2019, Mr. James was arrested and booked into the jail.  (ECF No. 1, ¶ 70, PageID #19.)  During the booking process, Mr. James exhibited signs of physical and mental impairment.  While in his holding cell, Mr. James indicated that he suffered from post-concussive syndrome, complained of chest pain, and collapsed on the floor.  (*Id.*, ¶¶ 71 & 72, PageID #20.)  In addition, Mr. James "exhibited obvious signs that he was [mentally] unwell, including telling a nurse that he was a Templar Knight who had recently escaped being assassinated by the Pope."  (*Id.*, ¶ 75.)  Further, Mr. James "told the Jail's psychiatric nurse practitioner that he wanted to kill himself."  (*Id.*, ¶ 76.)  As a result, the nurse placed Mr. James on full suicide precautions.  (*Id.*)

Defendants denied these allegations for lack of sufficient information.  (ECF No. 9, ¶ 32, PageID #279.)  In their brief opposing the motion to compel, the County states that, in the hours before his detention, Mr. James "tested positive for PCP and was largely unresponsive and uncooperative with intake corrections officers."  (ECF No. 22, PageID #564.)

### A.1.   Use of Pepper Spray on October 18, 2019

Sergeant Adam Broeckel escorted Mr. James to a cell in the mental health housing unit and ordered Mr. James to remove his clothing.  (ECF No. 1, ¶ 78, PageID #21.)  The complaint alleges that a body-worn camera documented the events that followed.  (*Id.*)  Mr. James did not comply with Sgt. Broeckel's order to disrobe and covered his face with a blanket.  (*Id.*, ¶¶ 78 & 80.)  Then, Sgt. Broeckel pepper sprayed Mr. James.  (*Id.*, ¶¶ 80 & 81.)  According to the complaint, "Mr. James posed no threat of harm to any officer or inmate."  (*Id.*, ¶¶ 82, PageID #21; *see also id.*, ¶¶ 83–89, PageID #22.)

Defendants deny these allegations.  (ECF No. 9, ¶¶ 32 & 33, PageID #279.)  In their motion papers, the County offers two clarifications to these alleged fats.  (ECF No. 22, PageID #564.)  First, the County posits that medical personnel asked Mr. James to remove his clothes as part of the suicide precautions that the jail takes.  (*Id.*)  He was offered two suicide blankets to cover himself and stay warm.  (*Id.*)  Second, the County represents that "[t]he video pertaining to this incident confirms that Plaintiff was not pepper sprayed because he covered his face with his shirt."  (*Id.*)  Instead, Mr. James refused to follow directions and was in his cell unrestrained.  (*Id.*)

### A.2   Use of Oleoresin Capsicum on October 27, 2019

On October 27, 2019, Mr. James engaged in an altercation with staff while at the medical dispensary.  On that day, according to the complaint, Mr. James went to the medical dispensary to obtain a bandage for a laceration of his finger.  (ECF No. 1, ¶ 105, PageID #25.)  While walking to the medical dispensary, Corrections Officer Damein Bodeker threatened to pepper spray Mr. James.  (*Id.*, ¶ 106.)  In the

dispensary, the complaint alleges that body-worn cameras captured what happened next.  (*Id.*)  According to the complaint, Officer Bodeker ordered Mr. James to sit down in a chair.  (*Id.*)

After the jail nurses provided care to Mr. James, Officer Bodeker ordered Mr. James to stand up and place his arms behind his back.  (*Id.*, ¶ 107, PageID #26.)  As Mr. James stood up, his pants fell below his buttocks.  (*Id.*, ¶ 108.)  Instead of allowing Mr. James to pull his pants up, Officer Bodeker "immediately used force against Mr. James [by] grabbing his arms."  (*Id.*, ¶ 111.)  After Mr. James flinched, officers bent him over a desk while two corrections officers, Frederick Barthany and Officer Bodeker, sprayed oleoresin capsicum foam into Mr. James' face.  (*Id.*, ¶¶ 114 & 115, PageID #27.)  While three officers restrained Mr. James, face down, on the floor, Officer Barthany sprayed foam directly into Mr. James' eyes for four seconds from a distance of one inch.  (*Id.*, ¶¶ 117 & 119.)  Then, officers strapped Mr. James into a restraint chair.  (*Id.*, ¶¶ 121 & 126, PageID #28.)  Defendants deny these allegations.  (ECF No. 9, ¶¶ 38–45, PageID #279–80.)

In response, the County offers a different version of events.  (ECF No. 22, PageID #565.)  While Mr. James, who stands six feet ten inches tall and weighs over three hundred pounds, was unrestrained in a small room "in the close proximity of other inmates and nurses," he became combative.  (*Id.*)  An officer requested that he put his hands up to be handcuffed and used OC pepper foam when Mr. James refused to comply.  (*Id.*)

4

B.    **Plaintiff's Claims**

Based on these alleged facts, Plaintiff filed a ten-count complaint against Cuyahoga County and Corrections Officers Broeckel, Bodeker, and Bartheny on October 15, 2021.  (ECF No. 1.)  Plaintiff asserts causes of action for excessive force in violation of 42 U.S.C. § 1983 (Count 1); intentional and negligent infliction of emotional distress (Counts 2 and 3); claims against Cuyahoga County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Counts 4, 5, 6, 7, and 8); an equal protection claim against the County (Count 9); and failure to intervene in violation of Section 1983 against Officers Bodeker and Barthany (Count 10).

C.    **Discovery**

On November 24, 2021, Plaintiff propounded requests for production of documents to Cuyahoga County.  (ECF No. 21-2, PageID #383–88.)  Two requests are at issue—Request No. 1 and Request No. 5.  They seek:

> 1.    All documents related to the use of force by any corrections officer against any inmate housed in the Jail's Mental Health Unit from October 19, 2017 to October 27, 2019.  Production should specifically include video footage from surveillance and body-worn cameras and written reports of such incidents.
>
> 5.    All documents related to the use of force against restrained inmates from October 19, 2017 to October 27, 2019.  Production should include video footage from surveillance and body-worn cameras and written reports of such incidents.

(*Id.*, PageID #385–87.)

Initially, the County objected to these requests, though it did so one day after the deadline.  (*See id.*, Page ID #392–93 & #400; Minutes, Dec. 28, 2021 (setting agreed deadline for discovery responses).)  In response to each request, the County

objected on the grounds of relevance, proportionality, and privilege.  (ECF No. 21-2, PageID #394–95 & #396–97.)  Although Rule 34(b)(1)(B) requires specificity for the grounds for any objection, the County's objections merely asserted relevance and proportionality in conclusory fashion without providing any grounds to support these objections.  Notwithstanding its objections, the County offered to make documents responsive to each request available for review at the offices of its counsel.  (ECF No. 21-2, PageID #394–95 & #396–97.)  But the County did not state that it would not permit inspection of any documents on the basis of any objection.  *See* Fed. R. Civ. P. 34(b)(1)(C).

### C.1.    Use-of-Force Reports and the Protective Order

In the course of coordinating inspection of these documents, counsel for the County disclosed that "[t]he incident reports are stored in filing cabinets in the Warden's Complex, so we have to coordinate with them.  They're not organized in any particular way, other than a loose chronological order, so reviewing them may take days."  (ECF No. 21-2, PageID #403.)  Later, counsel made arrangements to review and copy responsive documents at the prosecutor's office.  (*Id.*, PageID #410.)  In its motion papers, the County represents that an employee of the sheriff's department worked full time for just over two months to search the County's records for potentially responsive incident reports, which totaled about 10,000 pages.  (ECF No. 22, PageID #566.)  By May 10, 2022, the County made these reports available for inspection, and Plaintiff selected around 450 reports of incidents, comprising about 5,500 pages, involving use of force against individuals who were restrained or housed

6

in the jail's mental health unit.  (*Id.*; ECF No. 21-2, PageID #416–20; *id.*, ¶ 49, PageID #381.)

When the County produced these incident reports, it did so under the protective order, both "to keep track of these documents for further discussion" and because they contain "confidential and/or sensitive medical and psychiatric information intermingled throughout these documents."  (ECF No. 21-2, PageID #416; *see also id.*, PageID #416–20.)  Plaintiff took the position that these reports are public records, making designation under the protective order inappropriate.  (*Id.*, PageID #423.)  In response, counsel for the County specified that "[s]ome of the documents [contain] confidential information that is not subject to public disclosure such [as] medical information and social security numbers.  It will take me a very long time to go through the documents to redact this information."  (*Id.*, PageID #427.)  She offered to produce the documents then redact confidential information later.  (*Id.*)  Plaintiff agreed to immediate production and "coming to agreement on redactions as needed on a later date."  (*Id.*, PageID #432.)

### C.2  Video Footage

On multiple occasions, Plaintiff followed up to secure production of the video footage requested.  (*See, e.g.*, *id.*, PageID #441, #449, #451 & #455.)  In response, Defendants asked Plaintiff to "identify your top priority incidents and we can go from there.  Prior to the system we have now, the videos were *not* organized and labeled in a uniform fashion.  Frankly, this is going to take a lot of time and effort."  (*Id.*, PageID #464.)  As the County suggested, on May 19, 2022, Plaintiff prioritized 60 of the 450 incidents for immediate production as a "first-round of production" on a rolling basis.

7

(*Id.*, PageID #470–71 & #472.)  Nonetheless, the County did not produce any videos until November 2022.  (*Id.*, ¶ 50, PageID #382.)  However, that amount of time appears greater than it is because of the parties' efforts to mediate the case, during which the Court stayed discovery from the middle of July 2022 until early October 2022.  Apparently, the County has not produced 45 of those 60 videos.  (*See* ECF No. 22, PageID #569.)

### C.3.  Efforts to Resolve the Dispute

In October 2022, Defendants moved to bifurcate and stay discovery on Plaintiff's *Monell* claims.  (ECF No. 17.)  At a previously scheduled status conference held the same day, the Court requested certain supplemental information from the County.  (ECF No. 18, PageID #356–57.)  Before Plaintiff responded to the motion or the Court ruled on it, Defendants withdrew the motion.  (ECF No. 19.)  Also at that conference, counsel advised the Court that they had a dispute about at least one of the issues that is the subject of the motion to compel.  (ECF No. 18, PageID #356.)  At a follow-up status conference, the Court ordered the County to produce fourteen videos that were not in dispute and, because the parties reached impasse on these issues, set a briefing schedule.  (ECF No. 20.)

In his motion, Plaintiff requests an order compelling the County to:  (1) produce the 60 videos requested (or an explanation why they do not exist); and (2) remove the confidentiality designations to the incident reports and videos produced.  (ECF No. 21.)  Plaintiff also requests an award of reasonable expenses and attorneys' fees under Rule 37(a)(5).  (*Id.*)  Additional discovery disputes between the parties appear

8

to be at hand.  (*See* ECF No. 28.)  In this ruling, the Court only addresses the two primary disputes raises in the motion to compel.

## ANALYSIS

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A court "must limit the frequency or extent of discovery otherwise allowed" if the discovery sought falls outside this permissible scope of discovery or other circumstances apply that are not relevant here.  Fed. R. Civ. P. 26(b)(2)(C).

Rule 37(a) permits a party to move for an order compelling discovery, including an order compelling the production of requested documents.    Fed. R. Civ. P. 37(a)(3)(B)(iv).  Before moving to compel, Local Rule 37.1, like Rule 37(a)(1), obligates the parties to undertake in good faith efforts to resolve any discovery dispute before filing a motion with the Court.  Further, the Court's Civil Standing Order contains additional prerequisites, which the Court strictly enforces, to avoid unnecessary motion practice over discovery disputes.   In this case, the parties exhausted those efforts, and the Court authorized the filing of a motion to compel.

"On a motion to compel discovery, the moving party bears the burden of demonstrating relevance." *White v. City of Cleveland*, 417 F. Supp. 3d 896, 902 (N.D. Ohio 2019) (cleaned up).  If the movant makes such a showing, the burden then "shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.* (quotation and citation omitted).   In ruling on such a motion, the

Court has broad discretion in determining the scope of discovery. *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

## I.     The County's Objections

Plaintiff maintains that Defendants waived their right to object because its objections came after the deadline. (*See* ECF No. 21-1, PageID #266–67.)  Under Rule 34(b), a party has 30 days to serve objections to requests for prosecutions of documents.  Generally, "failure to object to discovery requests within thirty days provided by . . . [Rule] 34 constitutes a waiver of objection." *FCA US LLC v. Bullock*, 329 F.R.D. 563, 566 (E.D. Mich. 2019) (quotation omitted).  "However, courts will examine the circumstances of each case, including the reason for tardy compliance, prejudice to the opposing party, and the facial propriety of the discovery requests to determine whether enforcement of the waiver is equitable." *Id.* (quotation omitted).

### I.A.     Timeliness

In this case, the County objected to Plaintiff's requests one day after the deadline.  "On this basis of waiver alone," Plaintiff argues, "the Court may decline to consider the belated objections and enter an order compelling production."  (ECF No. 21-1, PageID #367.)  True enough.  But counsel for the County provided a good reason for missing the deadline by one day.  She was involved in a car accident that resulted in multiple broken bones in her right hand.  (ECF No. 22-1, ¶ 2, PageID #574.)  This accident occurred two days before the objections were due, and counsel was hospitalized all day on the date of the deadline.  (*Id.*, ¶ 3.)  Under these circumstances, a ruling that the County waived its objection would be inequitable. *See Bullock*, 329 F.R.D. at 566.  Indeed, Plaintiff fails to argue that the one-day delay

10

worked any prejudice and makes no argument in reply that the Court should strictly enforce the missed deadline. Therefore, the Court finds that the County did not waive its objections to Plaintiff's requests for production by asserting them one day after the deadline.

### I.B.   Waiver

Rule 34(b)(2)(B) requires a responding party to "state with specificity the grounds for objecting to the request, including the reasons." In 2015, this language was added to Rule 34 to conform to the requirement that has long applied to responses to interrogatories under Rule 33. *See* Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment. Further, the requirement for specificity ties into the requirement added to Rule 34(b)(2)(C) in 2015 for a responding party to state whether it is withholding any responsive documents on the basis of an objection. These amendments "marked an intentional break from the discovery gamesmanship of the past and called on attorneys—as well as the federal courts—to adopt a more cooperative, transparent, and pragmatic approach." *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 311 (C.D. Cal. 2020).

The County's objections do not meet the Rule's requirement for specificity. They simply recite, with no supporting grounds or reasons, that the requests at issue seek matters that are not relevant and that the discovery requested is not proportional to the needs of the case. (ECF No. 21-2, PageID #394 & #396.) Because the County failed to provide specific grounds to support its relevance and proportionality objections when served, it has waived these objections. This waiver should not come as a surprise. Courts have long recognized that general or

11

boilerplate objections that lack particularity to the facts of the case waive any legitimate objection. *See, e.g.*, *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008).

That waiver does not open the door to limitless discovery. Rule 26(b)(2)(C) mandates that a court limit discovery in certain circumstances. However, none of those circumstances apply here (yet), and the County does not argue otherwise. Further, a court has broad discretion under the discovery rules to decide whether to enforce a waiver of an objection. In making that determination, the party that failed to particularize its objections bears the burden of avoiding the waiver. *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005). To show good cause why the waiver should not be enforced, courts look to various factors, including: (1) the length of the delay or failure to particularize and the reasons for the same; (2) bad faith on the part of the responding party; (3) prejudice to the requesting party; (4) the propriety of the discovery request, including under the cost-benefit factors of Rule 26(b)(2); and (5) whether waiver works an excessively harsh result on the defaulting party, including whether the waiver is particular to a request or results in a broad-subject matter waiver. *Id.* Additionally, the Court considers the fact that Plaintiff sought to enforce a waiver based only on timeliness, not the specificity requirement of Rule 34.

In this case, the Court will proceed to analyze the dispute on the merits for two reasons. First, the discovery sought potentially implicates the privacy interests of third parties. Second, resolving this dispute on the merits might help the parties avoid ongoing or future discovery disputes, if only through application of Rule

26(b)(2)(C).  In doing so, the Court emphasizes that the sorts of reasons the County identified in follow-up correspondence with Plaintiff would satisfy the specificity requirement of Rule 34(b)(2)(B).  However, omitting that detail from the formal responses suffices to waive the objection.  "No benefit is achieved by allowing piecemeal objections to producing requested discovery, as this adds unnecessary expense to the parties and unjustified burden on the court."  *Hall*, 231 F.R.D. at 473. Further, it makes discovery a moving target and introduces the type of gamesmanship that the 2015 amendments sought to minimize.

## II.    Requests for Production

The County argues that Plaintiff has not met his initial burden of establishing relevancy because Plaintiff seeks documents pertaining to a different constitutional violation than the one he allegedly suffered.  (ECF No. 22, PageID #569–71.)  It bears the burden of avoiding the waiver of its conclusory and unsupported objection.

### II.A.   Factual Dispute

At the heart of the discovery fight between the parties lies a factual dispute about the events at issue involving Mr. James.  As set out above, the parties have different views of the events that give rise to this lawsuit.  Based on its version of events, the County resists discovery arguing that "Plaintiff's discovery requests fail from the outset" because "Plaintiff was not pepper sprayed while in the mental health unit and Plaintiff was not pepper sprayed while he was restrained."  (ECF No. 22, PageID #570.)  The County also argues that "videos regarding restrained individuals have no relevancy because Plaintiff was not restrained when Defendants deployed pepper spray" and that "Plaintiff seeks videos for several inmates who were not in

13

the medical unit or were restrained," which are not relevant either.  (*Id.*)  Further, the County maintains that discovery relating to suicide attempts has no relevance because "at no time did Plaintiff attempt suicide while housed in the Jail."  (*Id.*)  Therefore, the County argues that the discovery Plaintiff seeks has no relevance to efforts to prove his *Monell* claims.  (*Id.*)

Setting aside the fact that the County blurs the line between the two separate use-of-force incidents involving Mr. James that occurred on different days in different circumstances, the County apparently wants the Court to make factual determinations through this discovery motion that will carry over to summary judgment or trial.  Indeed, the County's argument comes down to this: "Plaintiff does not explain how any of these incidents involve a constitutional violation at all, let alone a constitutional violation sufficiently related to support a *Monell* claim. Moreover, he does not explain a nexus between his allegations and the requested discovery."  (*Id.*)  That argument belongs before a jury or in a summary judgment motion.

To have a baseline to establish relevance in resolving this dispute, the Court ordered Defendants to submit videos of the incidents alleged in the complaint involving the use-of-force against Mr. James.  (ECF No. 23, PageID #575–76.)  Based on review of the videos submitted, the Court makes the following observations that bear on resolution of this dispute.  Regarding the events of October 18, 2019, Defendants submitted one video (ECF No. 25, Ex. A), which shows, as the complaint alleges (ECF No. 1, ¶¶ 78–81, PageID #21), that Sgt. Broeckel pepper sprayed

14

Mr. James after Mr. James refused to remove his clothing.  After deploying the spray, officers restrained Mr. James.

As for the events of October 27, 2019, five videos show that Mr. James was handcuffed and surrounded by officers as they escorted him from the medical area. When the videos resume, Mr. James is unrestrained and sitting next to a desk when officers ask him to stand up and put his hands behind his back.  Then, as the complaint alleges (*id.*, ¶¶ 114 & 115, PageID #27), multiple officers bent Mr. James over a desk and, as some hold his hands or arms, one deploys pepper spray onto his face.  Mr. James falls to the floor while officers physically surround him and then place him in a chair and restrain him.  At any rate, the videos do not contradict the material facts within Plaintiff's complaint.

## II.B.  Relevance

The County argues only that Plaintiff fails to establish the relevance of the videos he seeks.  (ECF No. 22, PageID #569.)  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Information need not be admissible to be discoverable.  *See* Fed. R. Civ. P. 26(b)(1).

Plaintiff asserts that the videos sought are relevant to his *Monell* claims against Cuyahoga County under Section 1983.  (ECF No. 21-1, PageID #71.) Specifically, Plaintiff alleges that Cuyahoga County "permits, tolerates, and is deliberately indifferent to the use of excessive force by its corrections officers at the jail," and it has a "custom, policy, pattern, and practice[] [that] directly led to

15

Defendants Broeckel, Bodeker, and Barthany attacking Mr. James on October 18, 2019 and October 27, 2019." (ECF No. 1, ¶ 426, PageID #78.) At bottom, Plaintiff alleges that the County has a custom, policy, or practice of using excessive force against inmates with mental health illnesses and using excessive force against restrained inmates. (*Id.*, ¶¶ 425–34 & 445–51.) Further, Plaintiff alleges that the County is liable for failing to train and supervise corrections officers and medical personnel within the jail. (*Id.*, ¶¶ 435–44.)

At this stage of the proceedings, Plaintiff's request for production of at least the 60 priority videos depicting the use of force against restrained inmates and inmates in the mental health unit are relevant to his claims. The County argues that the videos requested are not relevant because Plaintiff was not restrained when pepper spray was deployed against him. (ECF No. 22, PageID #570.) But the videos of Plaintiff's incident do not directly contradict Plaintiff's allegations. Further, the record does not make clear that the County does not classify the incidents involving Mr. James as not involving the use of force. Indeed, the County makes no such argument. To the extent these videos show incidents occurring in other locations, that does not make them irrelevant, as the County argues. (ECF No. 22, PageID #570–71.) What matters are the County's policies and practices and whether Plaintiff can establish a pattern of similar violations. Location might affect the similarity or dissimilarity of other incidents in that analysis. In the first instance, however, that information must be discovered before the parties make their respective arguments.

Videos of other use-of-force incidents might tend to prove or disprove Plaintiff's *Monell* claims based on their similarity to or differences from the conduct that Plaintiff contends violates his constitutional rights. Discoverability of these 60 videos says nothing about the admissibility of the videos, but the videos bear on whether Plaintiff can prove "[a] pattern of similar constitutional violations by untrained employees [that] is ordinarily necessary to demonstrate deliberate indifference for purposes of a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted). Perhaps the limitations of Rule 26(b)(2)(C) will come into play after this production. But that decision remains for another day.

*     *     *

For these reasons, the Court determines that all video footage from the 60 priority incidents Plaintiff identified is discoverable and **ORDERS** the County to produce those videos.

### III.    Confidentiality Designations

Next, Plaintiff seeks an order compelling Defendants to remove confidentiality designations from the incident reports and videos produced. (ECF No. 21, PageID #361.) In its production, Defendants labeled these items as confidential pursuant to the stipulated protective order. (ECF No. 11.) The protective order permits parties to designate documents as confidential if they "contain information protected from disclosure by statute or that should be protected from disclosure as confidential information, medical or psychiatric information, trade secrets, personnel records, or such other sensitive commercial information that is not publicly available." (*Id.*, ¶ 3, PageID #298.) However, the protective order prohibits designating as confidential

17

"public records and other information or documents that are publicly available." (*Id.*, ¶ 3, PageID #298–99.)  Based on this provision, the parties dispute whether the incident reports and vides are public records under State law.

Ohio law defines public records broadly, and the documents and videos plainly constitute public records under State law unless a statutory exception exempts them from disclosure.  Ohio Rev. Code § 149.43(A)(1).  The County points to social security numbers and medical information as statutory exceptions.  (ECF No. 22, PageID #571.)  In this respect, the County is correct.  Ohio law excludes social security numbers from the definition of public records.  Ohio Rev. Code § 149.43(A)(1)(dd) (cross-referencing Ohio Rev. Code § 149.45(A)(1)(a)).  It also excludes medical records. *Id.* § 149.45(A)(1)(a).  For purposes of the Ohio Public Records Act, a "medical record" means "any document . . . that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment."  *Id.* § 149.45(A)(3).  Based on this definition, documents that contain information that "touch upon" a personal's medical history or treatment are not medical records within the meaning of the Act.  *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St. 3d 149, 2012-Ohio-115, 962 N.E. 2d 297, ¶ 42.

Although the statutory text exempts identifiable information and medical records from the definition of public records, the Ohio Supreme Court consistently interprets the Ohio Public Records Act as "envision[ing] an opportunity for the public office to examine records prior to release in order to redact exempt materials

18

appropriately." *State ex rel. Shaughnessy v. City of Cleveland*, 149 Ohio St. 3d 612, 615, 2016-Ohio-8447, 76 N.E.3d 1171, 1175, ¶ 12 (per curiam) (citations omitted). Under the protective order, then, the County must produce the requested documents with social security numbers redacted because they are not "publicly available." (ECF No. 11, ¶ 3, PageID #298.)

Regarding medical records, the County may withhold from production only documents that meet the strict definition of Section 149.45(A)(3). The Court orders the County to log any document withheld pursuant to this definition with sufficient information to allow Plaintiff to challenge any withheld in whole or in part from production. To the extent the County's concern with production involves "sensitive medical information" (ECF PageID #571), it may redact that information or remove the person's name so long as it uses another unique identifier in its place. Redactions of these sorts are common in discovery practice and balance the interests of third-parties in the privacy of their medical information, the County as the custodian of that information, Plaintiff's ability to discover information under the Rules, and the public as expressed in State law. This practice is also consistent with the charge of the Ohio Public Records Act, which mandates a public custodian to "make available all of the information within the public record that is not exempt." Ohio Rev. Code § 149.45(B)(1). In this way, the protective order does not permit marking these responsive documents as confidential.

Additionally, the County argues that Ohio law exempts the videos at issue because they contain "naked individuals who are not parties to this action,

individuals engaged in suicide attempts or individuals explaining suicidal ideations." (ECF No. 22, PageID #572.)  The County argues that "[i]mages and video in which a responsible person of ordinary sensibilities would find as an offensive and objectionable intrusion into one's expectation of bodily privacy and integrity are not public records." (*Id.*)  But it is not clear that such content in this case removes the videos from the scope of the Ohio Public Records Act.  For its argument the County takes language from the Act out of context.  As relevant here, the Act exempts the following:

> (ii)   Any depiction by photograph, film, videotape, or printed or digital image under either of the following circumstances:
>
> > (i)   The depiction is that of a victim of an offense the release of which would be, to a reasonable person of ordinary sensibilities, an offensive and objectionable intrusion into the victim's expectation of bodily privacy and integrity.

Ohio Rev. Code § 149.43(A)(1)(ii)(i).  Accordingly, this exemption applies only to "a victim of an offense."  Perhaps the County maintains that the subjects of the videos are victims within the meaning of the statute, but they do not so argue expressly— perhaps because such an argument would have serious collateral consequences for the County.  Moreover, as persons detained or housed in the jail, the subjects of the videos have a diminished privacy interest.  But application of these aspects of the statute need not detain the Court.  Here too, the County can redact the videos to obscure the inmates' faces and conceal their identities if necessary and appropriate.

Finally, the Ohio Supreme Court construes the Ohio Public Records Act "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Rogers v. Department of Rehab. & Corr.*, 155 Ohio St. 3d 545, 547, 2018-Ohio-5111, 122 N.E.3d 1208, 1211, ¶ 6 (quotations omitted).  Under

the Act, the Ohio Supreme Court recognizes that "use of force reports, use of mace reports, injury to prisoner reports, complaint reports, and use of firearm reports" are unquestionably public records. *State ex rel. Dispatch Printing Co. v. City of Columbus*, 90 Ohio St. 3d 39, 2000-Ohio-8, 734 N.E.2d 797, 798, syllabus & 799; *see also State ex rel. Standifer v. City of Cleveland*, 2022-Ohio-3711, ¶¶ 13–22 (per curiam) (holding that use-of-force reports are not confidential law-enforcement investigatory records exempt from disclosure under the Ohio Public Records Act).

Accordingly, the Court **ORDERS** Defendants to produce the incident reports and videos with appropriate redactions and to log any medical records withheld from production.

## IV.    Costs and Attorneys' Fees

When granting a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless one of three exceptions applies.  Fed. R. Civ. P. 37(a)(5)(A).  The County may make any argument that an exception to the mandatory award of fees and expenses applies in a brief not to exceed 12 pages filed no later than January 13, 2023.  Plaintiff may respond in a brief not to exceed 12 pages by January 20, 2023.  The Court schedules a hearing on the matter for January 27, 2023 at 1:00 pm in Courtroom 16B.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to compel (ECF No. 21), requests supplemental submissions from the parties on the issue of

attorneys' fees and expenses, and schedules a hearing on January 27, 2023 at 1:00

pm in Courtroom 16B.

      **SO ORDERED.**

Dated:  December 28, 2022

                                         J. Philip Calabrese
                                         United States District Judge
                                         Northern District of Ohio