**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEONTE JAMES,** | ) | **CASE NO. 21-CV-1958** |
| | ) | |
| Plaintiff, | ) | **JUDGE J. PHILIP CALABRESE** |
| | ) | |
| v. | ) | |
| | ) | **MOTION TO DISQUALIFY** |
| **CUYAHOGA COUNTY,** *et al.*, | ) | **JUDGE PURSUANT TO** |
| | ) | **28 U.S.C § 455** |
| Defendants. | ) | |

Come now Defendant Cuyahoga County, and pursuant to 28 U.S.C § 455, respectfully moves this Honorable Court to disqualify itself from presiding over this matter. The grounds for this motion, which grounds are more specifically set forth in the attached Memorandum in Support of Motion to Disqualify, are that the Court's impartiality in this matter might reasonably be questioned, and that the Court has evidenced personal bias and prejudice against the Defendants.

In addition, further grounds for disqualification exist as the Court has personal knowledge of disputed evidentiary facts concerning the proceeding due to his previous participation, in private practice, as counsel for some twenty named plaintiffs in the case of *Clay, et al. v. Cuyahoga County, et al., Case No. 1:18-cv-02929, United States District Court, N.D. Ohio (2019) (Doc.# 33)* (a class action lawsuit brought by some twenty plaintiffs against the County alleging in the eighty-four page complaint the existence of numerous unconstitutional conditions in the Cuyahoga County Jail, including violations of the First, Fourth, Fifth, Sixth, Eight and Fourteenth Amendments. (See the Amended Complaint, attached hereto as Exhibit "A").

Moreover, this Court has recently authored a written a decision in the case of *Brack v. Budish*, 2022 U.S. Dist. LEXIS 73436, 599 F. Supp. 3d 607, in which the Court prejudged the merits of any case coming before it concerning operations of the Cuyahoga County Jail and did so

1

in reliance on either personal knowledge of the disputed facts concerning the jail, or upon hearsay reporting in the local media.

The law governing this motion is contained in 28 U.S.C § 455, which in pertinent part reads:

**Disqualification of justice, judge, or magistrate [magistrate judge]**

(**a**) Any justice, judge, or magistrate [magistrate judge] of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(**b**) He shall also disqualify himself in the following circumstances:

(**1**) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; * * *

(Emphasis added).

As set forth in the attached Memorandum in Support, good grounds exist under 28 U.S.C § 455 to establish the Court's impartiality might reasonably be questioned, and that the Court has both a personal bias or prejudice against the County as is relates to the County Jail. In addition, the Court's recitation of facts concerning the County Jail's operation in the *Brack* decision finds no basis in any evidence properly adduced before the Court, leading to the unavoidable conclusion that the Court is basing its decisions either on claimed personal knowledge of disputed evidentiary facts concerning the operation of the County Jail, or upon inadmissible hearsay accounts of various lawsuits against the County.

WHEREFORE, Defendant prays for an order of this Court disqualifying it from presiding over this proceeding.

        Respectfully submitted,

        Michael C. O'Malley, Prosecuting Attorney of
        Cuyahoga County, Ohio

By:    _/s/*David G. Lambert*____
        David G. Lambert (0030273)
        (216) 443-7829
        dlambert@prosecutor.cuyahogacounty.us
        Janeane R. Cappara (0072031)
        jcappara@prosecutor.cuyahogacounty.us
        Phone: (216) 698-2224

        Cuyahoga County Prosecutor's Office
        The Justice Center, Court Tower
        1200 Ontario Street, 8th Floor
        Cleveland, OH 44113
        Fax: (216) 443-7602

        *Counsel for Defendant Cuyahoga County*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2023, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

        /s/*David G. Lambert*____
        David G. Lambert (0030273)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DEONTE JAMES,** | ) | CASE NO. 21-CV-1958 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MEMORANDUM IN SUPPORT |
| | ) | OF MOTION |
| **CUYAHOGA COUNTY,** *et al.*, | ) | TO DISQUALIFY JUDGE |
| | ) | PURSUANT 28 U.S.C § 455 |
| Defendants. | ) | |
| | ) | |

## PROCEDURAL BACKGROUND

This matter is presently before this Court pursuant to the Court's recent granting in part of Plaintiff's Motion to Compel. As the relevant procedural history is adequately set out in Defendant's "Supplemental Submission Pursuant to December 28, 2022 Order," those facts are incorporated fully herein by reference and will not be set out again herein.

### PLAINTIFF'S COUNSEL'S RECENT INVOCATION OF COURT'S PREJUDICIAL DECLARATIONS CONCERNING THE COUNTY JAIL IN THE *BRACK* CASE

**The Underlying Discovery Dispute**

The underlying discovery dispute in this case was prompted in part by the County's claim that complying with Plaintiff's production request (seeking all documents related to "use of force" over a two-year period of time) would require the County Sheriff's Department to physically review every "incident report" generated by them over the two-year period, read the report to determine whether it qualified as a "use of force", and further to determine, if it did, whether it involved a disabled inmate housed in the mental health unit. While this Court granted Plaintiff's Motion to Compel in part, it has scheduled a hearing on January 27, 2023.

4

Defendant asserted, in good faith, that responding to Plaintiff's far-ranging requests, which were irrelevant to Plaintiff's claims and were only relevant to a tenuous possible *Monell* claim, were overly broad and unduly burdensome. In briefing that issue, Plaintiff's counsel has urged this Court to reject the County's argument, claiming, falsely, that the County's duty under Ohio Public Records Law to "organize and maintain public records in a manner that they can be made available for inspection or copying" means the County could never claim that locating, reviewing, and producing records – no matter how voluminous – would constitute an undue burden. The implication is that if records are organized and maintained in a manner that they *can* be made available for inspection or copying, it cannot, *eo ipso*, be burdensome to produce them, and thus any claim that a discovery request is excessive or not proportional to the case must fail.

**Plaintiff's Motion to Compel**

In its Motion to Compel, Plaintiff argues the County has duty (under Ohio Public Records Law) to keep all of it records in such a way that it will never be burdensome for the County to retrieve records. Thus, in Plaintiff's "Memorandum in Support of Plaintiff's Motion to Compel Defendant Cuyahoga County to Produce Use-of-Force Videos and Remove Confidentiality Designations from Public Records," (Doc#21-1) ("Motion to Compel"), Plaintiff's counsel argues it is the County's "fault" that it cannot immediately and painlessly retrieve the records sought here, because Ohio Public Records Law requires the Sheriff to: " 'organize and maintain public records in a manner that they can be made available for inspection or copying.' " Ohio Rev. Code § 149.43(B)(2)." Thus, the County may not argue that responding to Plaintiff's discovery would be unduly burdensome and not proportional.

This is sophistry: while the Sheriff must organize and maintain records so that they can be made available, he is not under a duty to magically cross-reference them so that they in every

5

instance a certain sub-class of them can be immediately and painlessly retrieved and produced. In effect, Plaintiff argues that even if responding to a discovery request creates a huge burden, it is the County's fault that it has not kept records stored in a way that anticipates Plaintiff's request, and thus makes the retrieval of records easy.

**Plaintiff's Appeal to the Bias and Prejudice of Court Previously Expressed in *Brack***

Here is where Plaintiff crosses a line: in attempting to argue the County's claim of undue burden is somehow invalid because it is the County's fault, Plaintiff's argument strays from discussing the law and assigns *moral blame* to the County. Sadly, in doing so, Plaintiff seeks to appeal to this Court's previously voiced bias and prejudice against the County. This is achieved by dragging up this Court's own derogatory comments in its *Brack* decision about the County's operation of the County Jail. That is the only justification for Plaintiff to make the following argument in its Motion to Compel:

> Given the civil and criminal proceedings surrounding the Cuyahoga County Jail over the past five years, it is troubling that the County has failed to organize and maintain this public-record evidence to facilitate litigation production:
>
> "Since 2018, more than twelve detainees have died at the Cuyahoga County jail, numerous others have suffered serious injury, conditions remain deplorable, and significant litigation continues in State and federal court to determine the legal consequences and responsibility, if any, relating to maladministration of the jail.
>
> *See Brack v. Budish*, --- F. Supp. 3d ---, 2022 WL 1192784, * 1 (N.D. Ohio Apr. 21, 2022).
>
> If the County does not have ready access to the evidence documenting the crucible of misery that is the County Jail or has failed to preserve this evidence for discovery and trial, Plaintiff has serious concerns about spoliation of *Monell* evidence.
>
> Likewise, any claimed burden based on the significant volume of responsive use- of-force videos was not caused by Mr. James, but is a function of the County permitting its corrections staff to use force against restrained detainees and against detainees with diminished mental capacity (without deescalating), both of which are unconstitutional. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004); *Martin v. City of Broadview Heights*, 712 F.3d 951, 962 (6th Cir. 2013).

> These are the precise unconstitutional policies that Mr. James alleges caused him harm. Producing the massive amount of evidence in its possession that supports Mr. James's *Monell* claims is not an undue burden on the County. That burden is fully and completely due."

To remind the Court, Plaintiff's claim stems from a correction's officer's use of pepper spray due to Plaintiff becoming irate and uncooperative while he was in the medical dispensary in the jail. It does not concern a death of an inmate, nor does it concern "deplorable conditions" in the jail. Thus, Plaintiff's invocation of this Court's declaration in *Brack v. Budish* case, and his reference to jail deaths and deplorable conditions, is nothing more than an appeal to the Court to act upon its bias and prejudice against the County, which bias and prejudice is plainly reflected in the quote from the *Brack* decision.

In fact, the most damning portion of this Court's opinion in *Brack* is the language that immediately follows the excerpt quoted by Plaintiff, which is highlighted as follows:

> Since 2018, more than twelve detainees have died at the Cuyahoga County jail, numerous others have suffered serious injury, conditions remain deplorable, and significant litigation continues in State and federal court to determine the legal consequences and responsibility, if any, relating to maladministration at the jail. **Public discourse places the moral and political blame for this situation at the feet of Cuyahoga County Executive Armond Budish and his administration. But there is plenty of blame to go around.**

*Brack v. Budish*, 2022 U.S. Dist. LEXIS 73436, 599 F. Supp. 3d 607

There is little wonder that in arguing this instant discovery dispute should somehow be decided by reference to the "crucible of misery that is the County jail," Plaintiff's counsel feels they have license to appeal to the Court's bias against the County by citing to the highly critical language used by the Court in the *Brack* opinion.

While this is evidence that good and valid grounds exist under 28 U.S.C § 455 to require disqualification, in this case, other grounds exist, including the Court's reliance on extra-judicial

7

facts in making its rulings. Confronted with this situation, the County reluctantly concludes it must address this issue by filing this motion.

### LAW RELATIVE TO DISQUALIFICATION OF FEDERAL JUDGES UNDER 28 U.S.C. §455(A) AND (B)(1)

The law governing this motion is contained in 28 U.S.C § 455, which reads in pertinent part as follows:

**Disqualification of justice, judge, or magistrate [magistrate judge]**

**(a)** Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**(b)** He shall also disqualify himself in the following circumstances:

**(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; * * *

This section of the United States Code directs that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard for recusal under Section 455(a) is objective rather than subjective. *See Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980). It no longer matters whether the judge subjectively believes she/he can decide a matter impartially. *Id*. Rather, the standard asks whether a reasonable person, knowing all the relevant facts, would deem the judge biased or partial. *Id*.

Recusal is required in all instances where there is a reasonable factual basis for doubting the judge's impartiality. *Id*. "What matters [under Section 455(a)] is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147 (1994). If a reasonable person, knowing all the relevant facts, would doubt the judge's impartiality, the judge is required to recuse himself. *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980). Even

8

where the question is close, the judge whose impartiality might reasonably be questioned must recuse. *See Roberts*, 625 F.2d at 129.

In addition, 28 U.S.C. §455(b) requires judges to disqualify themselves where they have a "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." But to be disqualifying, alleged bias and prejudice of a judge must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S. Ct. 1698, 1966 Trade Cas. (CCH) ¶ 71459, 1966 Trade Cas. (CCH) ¶ 71789, 1966 U.S. LEXIS 2988 (1966).

Finally, if a Judge has personal knowledge of disputed facts in case, he is likewise required to disqualify himself. 28 U.S.C. §455(b)(1) mandates disqualification in cases where the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding" This Court's decision in *Brack* clearly purports to state facts about events and the condition of the County Jail. Since those facts do not arise in any way from the evidentiary record in *Brack* or in this case, they must arise from personal knowledge gained extra-judicially. Thus, it is respectfully submitted that all three of the grounds set forth in 28 U.S.C. §455 exist in this case, and require the Court's disqualification from this, and from any case involving the County.

**THIS COURT HAS EVIDENCED BIAS AND PREJUDICE AGAINST THE COUNTY AND IS ALSO SITUATED SUCH THAT RECUSAL IS MANDATORY IN THIS CASE**

The County respectfully suggests that good grounds exist that disqualify this Court from presiding over this case. They derive from the Court's own pronouncements in the recent decision *Brack v. Budish, et al.* in which there are erroneous "findings" concerning the Cuyahoga County Corrections Center ("County Jail") were gratuitously made by the Court while resolving the

9

MetroHealth Defendants' Motion for Sanctions in *Brack*. (See Doc. #107). Moreover, given the Court's previous role as advocate for the Plaintiffs in *Clay v. Cuyahoga County* – where Plaintiffs alleged that entire classes of inmates in the County Jail encountered unconstitutional conditions of confinement – it appears this Court still harbors considerable bias against the County and its employees.

### The *Brack v. Cuyahoga County* Opinion Indicates Clear Bias and Prejudice Against the County and the County Executive

The *Brack* opinion was a ruling upon a motion for sanctions for frivolous conduct filed by MetroHealth against Plaintiff Gary Brack (a motion that did not even involve Cuyahoga County or County Executive Armond Budish). In ruling on that motion, the Court used its opinion to gratuitously disparage and malign both the County and Armond Budish concerning the operation of the Cuyahoga County Jail, and the deaths that have occurred over the last several years. Specifically, in ruling on the motion, which did not involve the County or Budish, the Court states as follows:

> Since 2018, more than twelve detainees have died at the Cuyahoga County jail, numerous others have suffered serious injury, conditions remain deplorable, and significant litigation continues in State and federal court to determine the legal consequences and responsibility, if any, relating to maladministration at the jail. Public discourse places the moral and political blame for this situation at the feet of Cuyahoga County Executive Armond Budish and his administration. But there is plenty of blame to go around.

In this Opinion and Order, the Court recites "facts" that are not in the record, to wit:

- *"Since 2018, more than twelve detainees have died at the Cuyahoga County jail"*

- *"numerous others have suffered serious injury"*

- *"conditions remain deplorable"*

- *"significant litigation continues in State and federal court to determine the legal consequences and responsibility, if any, relating to maladministration at the jail"*

10

At all times, Cuyahoga County and its officers and employees (including Mr. Budish) have a right to expect they will be treated in a fair and evenhanded manner when appearing in each courtroom. They, and most specifically, the former County Executive Armond Budish, are entitled to a have their cases adjudicated by a neutral and detached jurist; one who relies on facts adduced in court through the introduction of admissible evidence, and not on overblown claims found in pleadings and in local press reports (which most often merely regurgitate the exaggerated and overblown allegations in the Complaint).

Accordingly, it is deeply troubling to read the recent opinion authored by this Court which reveals that it has prejudged cases which are pending before it as well as other potential cases (involving the Cuyahoga County Corrections Center) that may come before it in the future. For this reason, the County is requesting that this Court recuse itself from presiding in any cases involving the Cuyahoga County Jail or Mr. Budish.

**The Court's Opinion regarding disputed evidentiary facts concerning the Brack proceeding stems from an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from his participation in that case.**

Moreover, the Court's recital of "facts" in its opinion are not based upon any evidence that has been presented to the Court in any case, much less in the *Brack* matter. To the contrary, the facts alleged in the opinion do not appear anywhere in the record of the *Brack* case (or anyplace else for that matter) and beg the question: What is the underlying source for these "factual recitations." Since these facts are not in the record of this case, or the *Brack* case, it is presumed this Court is deducing them from either personal knowledge or disputed press accounts concerning filed lawsuits. Both are improper sources for the Court to rely upon. Some of the statements are as follows:

> "*Since 2018, more than twelve detainees have died at the Cuyahoga County jail*."

11

As noted above, the Court states there have been twelve detainee deaths at the County Jail and impliedly suggests the County executives and others caused these deaths. However, the fact is that most of these deaths are not attributable to the County. Four of the deaths led to no lawsuits or settlements. Two other detainee death cases settled for nuisance value ($7,500 and $65,000) with no admission of liability. To imply that all twelve deaths were somehow caused by misconduct by County employees or officials is erroneous, misleading, and highly prejudicial.

It is well settled that a Court is not free to decide ahead of time, before hearing any relevant evidence in a case, that one party is "at fault." or that "there is ample fault to go around, and that Armond Budish bears blame." Yet this Court's opinion does exactly that. This Court's opinion is the very essence of prejudging a case: determining before hearing any evidence that fault lies with one of the parties.

The County is concerned that this Court has formed this opinion based upon press accounts, and not upon any evidence adduced in any proceeding over which the Court served as the trier of fact. Specifically, in this case, it appears the Court has evidenced a clear bias and prejudice against the County and Mr. Budish, evidence by its distortion of the situation existing in the County Jail and voicing of the Court's personal opinion that "**there is plenty of blame to go around**" concerning the jail.

**The origin of this Court's editorial criticism of this conduct is concerning.**

At the same time, this Court's recitation of "facts" in its opinion, and the Court's utilization of personal invective against the County and Mr. Budish reflects *either* personal knowledge of disputed evidentiary facts concerning the proceeding or reliance upon extra-judicial press accounts of conditions in the jail and the lawsuits filed against the County.

In fact, it appears this purported information is likely derived from press accounts on *cleveland.com* or the *Plain Dealer*. It is clearly not reflected as a fact in the evidentiary record in either the *Brack* case, (which never progressed beyond the motion to dismiss phase), nor in this case. Since this Court has heard no evidence on these deaths, the question must be raised as to whether the Court has personal knowledge of these deaths.

Moreover, this Court recites these deaths as evidence of "deplorable conditions" and "maladministration at the jail." Yet, this is pure speculation and conjecture on the Court's part that begs the question: does this Court believe that each time a person dies in the County Jail, it must be due to the County's fault? It seems this Court automatically assumes that none of these deaths could have been due to causes other than County negligence or misconduct. In learning about these deaths, did the Court also learn that several of the twelve deaths were unavoidable medical deaths and that the decedents family never sued the County or that other such cases were disposed or at "nuisance value"? This is inconsistent with the Court's attribution of these deaths to "deplorable conditions" and "maladministration of the jail." The relevance of those facts is that merely because a death occurs in the jail does not mean that the jail conditions are deplorable or that the deaths are occurring due to "maladministration at the jail." Yet this is the clear import of this Court's hyperbolic and unjust description of jail conditions.

### *"numerous others have suffered serious injury"*

Again, when the Court recites personal opinions as "facts" such as this, Defendant questions the source of its knowledge because there has never been a shred of evidence adduced in the *Brack* case on this issue. In fact, the use of the adjective "numerous" as well as the description of "serious injury" is highly conjectural. And the Defendant disputes these characterizations because there is actual information as to both the number of lawsuits alleging

13

that detainees suffered serious injury as well as the incredibly large number of inmates who come to reside in the jail as detainees in a given year. The Court's use of these terms (i.e., "numerous" and "serious injury") is hyperbolic and prejudicial. Unless this Court has been privy to extra-judicial information on these issues (which is prejudicial), Defendant questions the propriety of making such blanket statements, especially in ruling on a motion that has nothing to do with the number of injuries suffered by inmates. Again, as explained below, if the Court claims "personal knowledge of disputed evidentiary facts" concerning the *Brack* case or any other case involving the County Jail, it is required to disqualify itself from presiding over this case or any other "County Jail Case" under 28 U.S.C § 455(b)(2).

### "conditions remain deplorable"

This statement is egregious in two ways: it gratuitously asserts that conditions in the jail were deplorable at some unstated time in the past, and that they remain so as at the time the Order was written. There is simply no *evidence* of the "deplorable conditions" in the jail presented in this case or any other case.

### "Public discourse places the moral and political blame for this situation at the feet of Cuyahoga County Executive Armond Budish and his administration. But there is plenty of blame to go around."

As an initial matter, it is unclear what extrajudicial "public discourse" the Court is alluding to in its Order. The allegations of Plaintiff's counsel? Media reports (e.g., Cleveland.com articles)? Some unknown blog or other social media website? Notwithstanding, the fact that no evidence (other than allegations in pleadings, and arguments in briefs) was ever adduced in this case or the *Brack* case concerning how Cuyahoga County Executive Armond Budish and his administration share in the blame for deaths in the jail, the Court made this statement in its opinion. Nor is there

is evidence to support the Court's conclusion that "there is plenty of blame to go around." Such statements demonstrate egregious prejudgment by the Court.

### "**This failure of leadership**"

This Court also took it upon itself to make findings against the County and its officers and employees that are unsupported by the record. To begin, this Court states that "conditions remain deplorable" in the County Jail. (Doc. #107, PageID #1524). It then assumes "maladministration" of the County Jail at the hands of the County Executive, citing as its source some undefined "public discourse." (*Id.*) No evidentiary record exists upon which the Court could make such findings, such as those of ongoing "deplorable conditions" or maladministration. This raises the question: from what extrajudicial source has the Court derived its information? (e.g., media, former co-counsel in the *Clay v. Cuyahoga County, et. al.* lawsuit, or some other unknown source). One can only assume the Court's source is extrajudicial in nature. Nevertheless, reports from agencies qualified to review full-service jails, and published the same year as the *Brack* decision, have made actual inspections and reached findings that belie this Court's conjecture. (*See* Exhibit B).

Defendant can only deduce from the "Opinion and Order" that this Court formed its "opinions" about the County Jail on information gleaned from some combination of the following sources:

- Accepting as true the self-serving, sometimes fallacious, allegations in lawsuits filed against the County and its employees in other cases.

- Accepting as true statements in media sources that simply regurgitate unfounded allegations in legal pleadings submitted by plaintiffs' attorneys.

- From the Court's personal knowledge and experience in representing (along with others) the plaintiffs in the *Clay* lawsuit.

- The so-called U.S. Marshal Report ("Contested Marshal Report") authored in late 2018, not by the U.S. Marshal Service, but by Correctional

>Management and Communication Group, LLC. (a report that has never been admitted into evidence in any proceeding).

Consequently, this Court seems to have formed its opinions about the County Jail and County employees and officials based on extrajudicial sources that are unreliable from an evidentiary standpoint and likely would not be admissible to prove the County's liability.[1]

This Court further cites the Sixth Circuit decision in the case of *Moderwell v. Cuyahoga County, et al.* as reaching substantive conclusions concerning conditions in the Cuyahoga County Jail. (Doc. #107). But the Sixth Circuit's review involved an interlocutory appeal concerning the denial of qualified immunity on an F.R.C.P. 12(c) Motion for Judgment on the Pleadings. By rule, the Sixth Circuit Court could consider *only* the Complaint allegations and attachments to the Complaint, which "must be taken as true" for purposes of the motion. *See Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 659 (6th Cir.2021).

In *Moderwell*, the Sixth Circuit concluded that the issue of qualified immunity would have to wait until the summary judgment stage and allowed Plaintiff's claims to proceed to discovery. *Id.* at 663; 665-666. Germane to the executive level defendants, the Sixth Circuit stated:

>Whether this, or other, precedent clearly established a right that was violated by the Executive Defendants requires factual development regarding the exact circumstances faced by the Executive Defendants, what actions they took, what they knew when taking the alleged unconstitutional actions, and with what intent they acted.

*Id.* at 665-666. Consequently, the Sixth Circuit's decision in *Moderwell* established no set of facts evidencing the County or its officers and employees' liability, as its decision was based solely on

---

[1] Whether something is "publicly available," like the Contested Marshal Report, does not mean that it is reliable or even admissible. And given that the U.S. Marshal Service authored its report *after* Gary Brack's removal from the County Jail and this report did not find "deplorable conditions" in the County Jail, the Contested Report's findings are inconsequential to Gary Brack's case and dubious as to all others.

unproven factual allegations contained in a complaint.

Here, the Court correctly opines in the conclusion to its Opinion and Order that a complete evidentiary record in this case does not exist; therefore, the Court could not reach a conclusion as to the merits of MetroHealth's Motion for Sanctions. Notably, this Court writes:

> The Federal Rules of Civil Procedure push strongly in the direction of resolving disputes short of trial and, increasingly, without rulings on important merits issues. ***At times, this focus results in the resolution of a dispute too early or without enough litigation for the parties to test their respective claims and defenses and accept the result. This is such a case. For better and for worse, then, the parties—and, frankly, the Court—will never know whether Mr. Brack's claims had merit.*** In a case such as this, which presents matters of public concern of the highest order, this result understandably leaves all involved unsatisfied. But collateral proceedings do not provide an alternative vehicle for litigating the parties' respective positions on that question, and the Court declines to delve into them.

(Doc. #107, PageID #1585). Unfortunately, the Court failed to exhibit similar restraint in its condemnation of the County, its employees, and officials despite the incomplete record before it.

Based on this Court's opinions about the County Jail, this Court's ability to remain impartial can reasonably be questioned.

### THE COURT'S PARTICIPATION AS COUNSEL FOR PLAINTIFFS IN *CLAY V. CUYAHOGA COUNTY* REQUIRES DISQUALIFICATION IN THIS MATTER

In 2018, the Court, as a private attorney, filed an Amended Complaint in the *Clay* case, signing as Plaintiffs' counsel onto a Section 1983 lawsuit that alleged in some eighty-four pages numerous unconstitutional conditions occurring regularly in the Cuyahoga County Jail, including violations of the First, Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution as well as violations of the ADA, and the Rehabilitation Act. Indeed, the picture painted of the County Jail by then-private attorney Calabrese in the Amended Complaint was extreme. Suffice to read the first paragraph, which states as follows:

1. Cuyahoga County Corrections Center (CCCC) is operating under a state of constant crisis, endangering the health and safety of Detainees/Inmates and staff alike on a daily basis.

17

> CCCC is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving rise to a chaotic and perilous environment inside the jail walls. Detainees/Inmates are regularly denied access to adequate medical and mental health care, hygienic conditions, movement, sufficient and edible food, access to religion, and access to their attorneys. The conditions within CCCC violate the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at CCCC, yet have failed to timely or effectively remedy the deplorable state of affairs.

*Tonya Clay, et al., v. Cuyahoga County, et al.*, Case No: 1;18-cv-02929-SO (U.S.D.C., N. D. Ohio, 2019). Likewise, the Amended Complaint alleged that:

> 35. Unconstitutional and deplorable conditions in the CCCC are a historic problem. Defendants have long been on notice of – and have even taken action to worsen – overcrowding, unhygienic conditions, movement restrictions, insufficient and inedible food, lack religious freedom, lack of access to their attorneys, lack of accommodations for physical and psychological disabilities, and inadequate medical and mental health care. Defendants have further long been on notice of the incompetent supervision and management of the CCCC.

Clay Amended Complaint, paragraph 35, attached hereto as Exhibit "A."

Having taken positions, consistent with Civ. R. 11, that the unconstitutional conditions alleged in the Amended Complaint in fact existed in the jail at that time, and that the County and its management have "repeatedly and systematically" violated the rights of inmates in innumerable ways, it is hard to see how this Court can now purport to claim to be an impartial arbiter of cases assigned to it involving the County Jail and alleged constitutional violations. Moreover, since it is assumed the Court as a private attorney had personal knowledge of the facts alleged in the Clay Amended Complaint, the Court would have "personal knowledge of disputed evidentiary facts" concerning jail conditions and practices. 28 U.S.C. §455(b)(1) requires disqualification: "Where [a judge] has a personal bias or prejudice concerning a party, *or personal knowledge of disputed evidentiary facts concerning the proceeding;* * * *

Given the Court's appearance of bias, as well as its possible personal knowledge of disputed evidentiary facts, Defendant respectfully asks this Court to voluntarily recuse itself

pursuant to 28 U.S.C. §455 from this case, and from all lawsuits currently assigned to the Court's your docket – or which may be assigned in the future – in which plaintiffs allege their civil rights were violated while incarcerated in the County Jail. While Defendant's decision to make this request was difficult, it believes it is necessary to protect its due process rights, and the rights of its officers and employees, in current and future litigation concerning the County Jail.

        Respectfully submitted,

        Michael C. O'Malley, Prosecuting Attorney of
        Cuyahoga County, Ohio

By:   /s/*David G. Lambert*_____
       David G. Lambert (0030273)
       (216) 443-7829
       dlambert@prosecutor.cuyahogacounty.us
       Janeane R. Cappara (0072031)
       jcappara@prosecutor.cuyahogacounty.us
       Phone: (216) 698-2224

       Cuyahoga County Prosecutor's Office
       The Justice Center, Court Tower
       1200 Ontario Street, 8th Floor
       Cleveland, OH 44113
       Fax: (216) 443-7602

       *Counsel for Cuyahoga County*

## CERTIFICATE OF SERVICE

    I hereby certify that on January 26, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

       /s/*David G. Lambert*_____
       David G. Lambert (0030273)