# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DEONTE JAMES, | ) | Case No. 1:21-cv-01958 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| CUYAHOGA COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Due process of law requires that "a neutral and detached judge in the first instance" decide cases. *Ward v. Village of Monroeville*, 409 U.S. 57, 62 (1972). A judge must recuse where "his impartiality might reasonably be questioned" or "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. §§ 455(a) & (b)(1); *see also id.* §§ 455(b)(2)–(5). The recusal statute "promote[s] confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988).

At the same time, "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. University of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (quoting *In re Union Leader Corp.*, 292 F.2d 381, 391 (1st Cir. 1961)). Put simply, a judge must not recuse himself unless the law requires him not to preside over a particular case. *Garrett v. Ohio State Univ.*, 60 F.4th 359, 371 (6th Cir. 2023) (citation omitted). This

rule is straightforward: "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837 (1972) (Mem. of Rehnquist, J.) (collecting cases).  Indeed, the canons of judicial conduct direct that a "judge should hear and decide matters assigned, unless disqualified."  Code of Conduct for U.S. Judges, Canon 3(A)(2).

Such a rule makes sense.  Judges may not recuse "to avoid sitting on difficult or controversial cases." *Barksdale v. Emerick*, 853 F.2d 1359, 1361 (6th Cir. 1988) (quotation omitted).  Just as cases do not choose their judges, judges (in the lower courts) do not choose their cases.  "Recusing when it is not necessary under the law is the easy choice." *Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, 578 F. Supp. 3d 1011, 1024 (E.D. Ark. 2022).  But unwarranted disqualification comes at a cost. *Id.*  It allows litigants to "manipulat[e] the system for strategic reasons, perhaps to obtain a judge more to their liking." *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (Breyer, J.).  Fairness dictates that litigants live with the judge randomly assigned to hear their case, unless the law requires recusal. *Arkansas State Conf. NAACP*, 578 F. Supp. 3d at 1016.  After all, litigants are not entitled to judges of their choosing. *In re Detroit*, 828 F.2d 1160, 1167 (6th Cir. 1987) (quotation omitted).

Particularly where a case has proceeded for some time, "a change of umpire mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping." *In re United States*, 572 F.3d 301, 308 (7th Cir. 2009) (quoting *In re National Union Fire Ins. Co. of Pitt.*, 839 F.2d 1226, 1229 (7th Cir. 1988)).  For all

these reasons, "needless recusals exact a significant toll," *In re United States*, 572 F.3d at 308, and a judge has an obligation "not to recuse himself" absent a requirement to do so. *United States v. Hoffa*, 382 F.2d 856, 861 (6th Cir. 1967) (citing *In re Union Leader*, 292 F.2d at 391).

In 1974, Congress broadened the recusal statute, 28 U.S.C. § 455, by adding a requirement that a judge "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Pub. L. No. 93–512, § 1, 88 Stat. 1609, 1609 (1974). This amendment changed the inquiry from the judge's subjective self-assessment of bias to an objective assessment from the perspective of a reasonable person fully informed of all facts and circumstances, giving less solicitude to a judge's impartiality than the judiciary might. *Liljeberg*, 486 U.S. at 860–61; *see also Arkansas State Conf. NAACP*, 578 F. Supp. 3d at 1017 (quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)).

The 1974 amendment to Section 455 "modified, but did not eliminate, the duty to sit doctrine." *United States v. Snyder*, 235 F.3d 42, 46 n.1 (1st Cir. 2000). In this Circuit and others, "a judge has a duty not to recuse when there is not a reason for it." *United States v. Parker*, 837 F. App'x 341, 345 (6th Cir. 2020); *Scott v. Metropolitan Health Corp.*, 234 F. App'x 341, 354 (6th Cir. 2007); *United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007); *see also United States v. Wells*, 873 F.3d 1241, 1250 (10th Cir. 2017); 13D Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3549 (3d ed. 2008). Accounting for the time, resource costs, and other externalities involved, Section 455 governs where the need for recusal or

3

disqualification overrides a judge's duty to sit. *New York City Housing Dev. Corp. v. Hart*, 796 F.2d 976, 981 (7th Cir. 1986) (per curiam).

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to 28 U.S.C. §§ 455(a) and (b)(1), Defendant Cuyahoga County moves to disqualify the undersigned from this and any future case in which plaintiffs allege violations of their civil rights while detained at the county jail.  (ECF No. 33, PageID #703 & #721.)  This motion comes after the Court granted a motion to compel discovery in a pretrial detainee's lawsuit against jail officers and the County alleging use of excessive force in two incidents occurring about ten days apart.

In ruling on the discovery dispute that precipitated the County's motion to disqualify, the Court stated that it "has no view on the factual or legal merit of any party's claims or defenses, and this discussion of the background should not be taken as anything other than a summary of the record at this point in time as it bears on" the pending motion.  (ECF No. 29, PageID #610.)  That qualification remains true and applies to disposition of the County's current motion as well.

### A.    Plaintiff's Allegations and Claims

Plaintiff Deonte James was a pretrial detainee in the Cuyahoga County jail. (ECF No. 1, ¶ 90, PageID #22.)  According to the complaint, Mr. James is mentally impaired and has indicated his intention to harm himself.  (*Id.*, ¶¶ 10 & 76, PageID #3 & #20.)  As a result, jail officials placed Mr. James under full-time suicide precautions.  (*Id.*, ¶ 76, PageID #20.)  The complaint raises constitutional claims of excessive force based on two events that occurred while Mr. James resided in the jail's mental health unit.  First, on October 18, 2019, when Mr. James refused to undress

4

as a precautionary safety measure, a sergeant deployed pepper spray in his face. (*Id.*, ¶¶ 78–81, PageID #21.) Second, nine days later, Mr. James visited the medical dispensary to treat a laceration on his finger. (*Id.*, ¶ 105, PageID #25.) Following his treatment, when Mr. James stood up from his seat, several officers restrained him. (*Id.*, ¶¶ 107–115, PageID #26–27.) As multiple officers bent him over a desk, two others sprayed oleoresin capsicum foam in his face. (*Id.*, ¶¶ 114–115, PageID #27.) Three officers then pinned Mr. James to the ground, facedown, at which time a fourth officer sprayed foam in his eyes from a distance of one inch. (*Id.*, ¶¶ 117 & 119.) Officers finally strapped Mr. James to a chair, immobilizing him, and wheeled him away from the room. (*Id.*, ¶ 121, PageID #28.) Video footage from body and surveillance cameras captured these events.

Based on these alleged facts, Plaintiff filed a ten-count complaint against three corrections officers and Cuyahoga County on October 15, 2021. (ECF No. 1.) Plaintiff asserts causes of action for excessive force in violation of 42 U.S.C. § 1983 (Count 1); intentional and negligent infliction of emotional distress (Counts 2 and 3); claims against Cuyahoga County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Counts 4, 5, 6, 7, and 8); an equal protection claim against the County (Count 9); and failure to intervene in violation of Section 1983 against two of the officers (Count 10). None of Plaintiff's claims relates to the conditions of his confinement.

### B.    Other Cases Involving Cuyahoga County

This is not the first case against Cuyahoga County involving claims relating to incidents, conditions, or operations of the county jail over which the undersigned has

presided.  It is the seventh:  (1) *Brack v. Budish*, 1:19-cv-1436; (2) *Mayer v. Cuyahoga County*, 1:19-cv-2620; (3) *McPherson v. Cuyahoga County*, 1:20-cv-639; (4) *Roarty-Nugent v. Cuyahoga County*, 1:20-cv-1025; (5) *Nelson v. Cuyahoga County*, 1:20-cv-2783; (6) *Kiekisz v. Cuyahoga County Board of Commissioners/Cuyahoga County*, 1:21-cv-264; and (7) *James v. Cuyahoga County*, 1:21-cv-1958.  Other than *James*, each of these cases has now concluded.

Two contain background particularly relevant to the County's motion to disqualify:  *Brack* and *Roarty-Nugent*.

### B.1.  *Roarty-Nugent v. Cuyahoga County*

Like *James*, in *Roarty-Nugent* a pretrial detainee at the jail brought claims of excessive force and deliberate indifference against Cuyahoga County, certain public officials, and various jail personnel.  Janeane Cappara, one of the lawyers for Cuyahoga County in *James*, also represented the County in *Roarty-Nugent*. Likewise, Ashlie Case Sletvold and Jessica Smith Savoie served as counsel for the plaintiff in *Roarty-Nugent*, as they do in *James*. Pursuant to General Order 2020-27, *Roarty-Nugent* was reassigned to the undersigned on December 15, 2020.

On January 8, 2021, the Court held a status conference in *Roarty-Nugent*. Among others, Ms. Cappara and Ms. Sletvold appeared for their respective clients. At that status conference, the Court raised the question of recusal, and counsel for the defendants advised that they were considering filing a motion seeking disqualification.  (ECF No. 37, PageID #953.)  After disclosing the relevant facts and considerations, which are discussed below, the undersigned stated his determination that he could preside fairly and impartially.  (*Id.*, PageID #953–54.)  Nonetheless, the

6

Court invited a motion seeking recusal to provide additional facts or legal analysis it might have overlooked in making this determination.  (*Id.*, PageID #954; *see also Roarty-Nugent* Minute Order, Jan. 8, 2021.)  Cuyahoga County made no such motion.  (ECF No. 37, PageID #955.)   Nor did any other defendant.   Accordingly, the undersigned presided over *Roarty-Nugent* until it settled in the fall of 2022—over one year after the filing of *James.*

## B.2.   *Brack v. Budish*

In 2019, Gary Brack filed suit against Cuyahoga County, certain County officials, MetroHealth System, which provides healthcare at the jail, and certain MetroHealth executives.   Brack worked for MetroHealth at the jail, made public remarks critical of the County's operation of the jail, and claimed that he was fired in retaliation.   Kenneth Rock and Brendan Healy, who both appeared in *James*, represented Cuyahoga County in *Brack*.   Likewise, Ms. Sletvold and Ms. Savoie who serve as counsel for Mr. James, also represented the plaintiff in *Brack*.   Pursuant to General Order 2020-27, *Brack* was reassigned to the undersigned on December 15, 2020.

In February 2021, about six weeks after the status conference in *Roarty-Nugent* discussed above, the Court held a status conference in *Brack*.   Mr. Rock appeared for the County and Ms. Sletvold and Ms. Savoie appeared for the plaintiff.   At that status conference, counsel for MetroHealth raised the issue of recusal or disqualification. (ECF No. 37, PageID #955.)  Cuyahoga County did not. (*Id.*)  Again, the undersigned disclosed the relevant facts and considerations, discussed below, stated his determination that he could preside fairly and impartially, and again

invited a motion. (*Id.*, PageID #955–56; *see also Brack* Minutes, Feb. 26, 2021.) No party filed such a motion. (ECF No. 37, PageID #956.) Then, the undersigned presided over *Brack* until it settled. At the time of the settlement, a motion that MetroHealth filed seeking leave to file *instanter* a motion for summary judgment was pending. Because the case settled without a response to that motion from the plaintiff, the Court had no occasion to make factual findings. (*Id.*, PageID #958.) The Court dismissed *Brack* with prejudice in October 2021—though that was not the end of the case. (*See id.*)

### B.3. Substantive Rulings

For a time, *Roarty-Nugent*, *Brack*, and *James* were pending before the undersigned simultaneously. In both *James* and *Roarty-Nugent*, the complaint attached as the first exhibit a publicly available document—a 2018 quality assurance review and facility review of the Cuyahoga County jail. (ECF No. 1-2.) In *Brack*, the complaint referenced this report. Commonly known as the "Marshal's Report," because four members of the United States Marshal Service participated in the review (*id.*, PageID #100) and its official seal appears on the cover and on every page of the 52-page document (*id.*, PageID #95–146), the report found, among other things, "inhumane conditions of confinement" (*id.*, PageID #97). It also noted a number of deaths at the jail. (*See, e.g., id.*, PageID #98.) Cuyahoga County vigorously disputes the findings of the report and contests its admissibility in this or any other proceeding. The Court mentions it here only because of its appearance in the record of lawsuits against the County and its relevance to disposition of the County's motion to disqualify.

As the Court presided over the five other cases against the County alleging violations of civil rights at the jail involving claims of excessive force or unlawful conditions of confinement, the undersigned issued several dispositive rulings. As one example, in *McPherson*, the Court issued a 45-page ruling on a motion to dismiss, granting it in substantial part and dismissing most claims against the County. *See McPherson v. Cuyahoga Cnty.*, No. 1:20-cv-00639, 2021 WL 2841582, at \*18 (N.D. Ohio July 8, 2021).

### C. Prior Disclosures Relevant to Presiding Fairly and Impartially

As noted above, in *Roarty-Nugent* and *Brack*, the undersigned disclosed the following.

### C.1. *Clay v. Cuyahoga County*

Before taking the bench, the undersigned, on a *pro bono* basis, was one of several lawyers listed as counsel on a complaint filed on December 20, 2018 seeking prospective injunctive relief (but not money damages) on behalf of a putative class based on the conditions in which the jail confined pretrial detainees. Primarily, the undersigned's involvement in the case—which began with the filing of the complaint—focused on issues of class certification under Rule 23 and less on the merits of the substantive claims or defenses to them. In fact, the undersigned did not participate in factual investigation or tour the jail as part of his limited involvement in the case. When the undersigned was appointed to the State court bench, that representation ended in June 2019, shortly after the initial case management conference.

In that representation, the undersigned acquired no first-hand knowledge of conditions in the jail and no confidential information.  (ECF No. 37, PageID #955–56.)  Indeed, the County promptly made public any information that it supplied in connection with that case during the undersigned's involvement.  Cuyahoga County knew of this representation at the time and throughout the undersigned's service as a judge.  Mr. Healy and Dave Lambert, who entered an appearance for Cuyahoga County in *James*, represented the County in *Clay*.

### C.2.  Service in State Court

From July 2019 until taking the federal bench on December 5, 2020, the undersigned served as a judge on the Cuyahoga County Court of Common Pleas.  In that capacity, the undersigned disclosed that he participated in briefings by counsel for the County to that court.  Those briefings concerned two topics:  (1) the Covid-19 pandemic as it bore on operation of the felony criminal docket; and (2) the County's plans for construction of a new jail at a potential cost of hundreds of millions of dollars and its effects on court operations.  Those briefings did not include reports on any litigation or conditions in the jail (beyond efforts to comply with guidance from public health authorities regarding social distancing and other precautionary measures to try to limit spread of the virus).  To the best of the undersigned's knowledge, some content from those briefings remains confidential, while other content has become public.  None of it, however, bears on the allegations in *James*.

### C.3.  Prior Diligence

Because of these experiences and the volume of litigation involving the county jail, the undersigned familiarized himself with the law of judicial disqualification

10

before taking the federal bench.  (ECF No. 37, PageID #952–53.)  Previously, the Court disclosed those efforts to counsel.  (*Id.*, PageID #951.)

### D.    *Brack* Sanctions Ruling

When the plaintiff in *Brack* settled with Cuyahoga County, MetroHealth and its executives who were named as defendants signaled their desire to file a motion for sanctions against the plaintiff and his counsel (Subodh Chandra and Ms. Sletvold—the movants later withdrew their request for sanctions against Ms. Sletvold). Cuyahoga County, through its counsel, Mr. Healy, requested dismissal with prejudice to enforce the settlement agreement and to minimize its costs during proceedings relating to the forthcoming motion for sanctions.  The Court granted that request, dismissed *Brack* with prejudice, and retained jurisdiction to resolve the sanctions motion.

In a 63-page opinion and order dated April 21, 2022, the Court denied the sanctions motion.  *Brack v. Budish*, 599 F. Supp. 3d 607 (N.D. Ohio 2022).  The introductory paragraphs of that decision, the first sentence of which Mr. James cited in his motion to compel (ECF No. 21-1, PageID #374), provide the primary basis for the County's disqualification motion.  *Brack* opened:

> Since 2018, more than twelve detainees have died at the Cuyahoga County jail, numerous others have suffered serious injury, conditions remain deplorable, and significant litigation continues in State and federal court to determine the legal consequences and responsibility, if any, relating to maladministration at the jail.  Public discourse places the moral and political blame for this situation at the feet of Cuyahoga County Executive Armond Budish and his administration.  But there is plenty of blame to go around.
>
> For example, before its more recent efforts to improve healthcare at the jail, MetroHealth and its leadership team headed by chief executive

11

officer Dr. Akram Boutros took actions at the behest of Budish and his administration that allowed the regionalization efforts at the heart of the jail's troubles to proceed.  When Gary Brack, a nurse who worked at the jail for MetroHealth, warned the Public Safety Committee of the Cuyahoga County Council at a public hearing on May 22, 2018 of the Budish administration's actions that jeopardized detainees at the jail, Budish personally requested that Dr. Boutros remove Mr. Brack from his work at the jail. Although he knew better, Dr. Boutros complied. This failure of leadership contributed to the controversy that continues to surround the jail and deserves condemnation.

*Brack*, 599 F. Supp. 3d at 611.  Although consistent with well-pleaded allegations in the complaint and the record before the Court in the sanctions proceedings, those opening remarks did not constitute findings of fact or judicially noticed facts.  Nor were they based on personal knowledge.  Instead, these general remarks oriented the reader to the background circumstances giving rise to the *Brack* litigation and to his former employer's role in the events culminating in the motion for sanctions.  At bottom, the *Brack* sanctions ruling addressed at length—both factually and legally— whether Mr. Brack's counsel "had a good-faith basis factually and legally for the claims asserted."  *Id.* at 642.  Because the Court found that he did, sanctions were unwarranted.  *Id.*  Movants did not appeal.

### E.    Procedural History of *James*

In December 2021, the Court held an initial case management conference in *James*.  Counsel for Cuyahoga County appeared, and the Court and counsel charted a course for initial discovery responses.  (*See* Minutes, Dec. 28, 2021.)  In addition, at the recommendation of the parties, the Court set a deadline for motions directed at the pleadings.  (ECF No. 10, PageID #294.)  No counsel raised any issue of recusal or disqualification.

12

After the initial case management conference, the Court held status conferences in February and March 2022.  No counsel raised any issue of recusal or disqualification.  As noted, the Court issued the sanctions ruling in *Brack* on April 21, 2022.  Within a month of that ruling, the plaintiff in *Roarty-Nugent* sought reconsideration of the dismissal of his State-law claims for civil liability for criminal acts based on the applicable limitations period relying on a new decision from Ohio's Tenth District Court of Appeals.  *See Harris v. Cunix*, 2022-Ohio-839, 187 N.E.3d 582, ¶ 27 (Ohio Ct. App.).  Notwithstanding this new authority, the Court declined to reconsider the earlier order of dismissal.

Then, in *James*, the Court held status conferences in June and July 2022.  Again, at each conference, no counsel raised any issue of recusal or disqualification or mentioned the Court's sanctions ruling in *Brack*.  At the parties' request, the Court referred the case to a Magistrate Judge for mediation.  (Order, July 19, 2022.)  Those efforts did not lead to settlement.

In October 2022, in advance of the first status conference following the parties' unsuccessful mediation, the County moved to bifurcate and stay discovery on Plaintiff's *Monell* claims.  (ECF No 17.)  Bifurcation would allow the parties to defer a discovery dispute related to the *Monell* claims and proceed on Plaintiff's claims of constitutional violations against the officers involved in the two incidents at issue.  The Court ordered the County to supplement its bifurcation motion with additional information.  (ECF No. 18, PageID #356.)  Eight days later, the County withdrew its motion.  (ECF No. 19.) At the status conference following the parties' unsuccessful

13

mediation, no counsel raised any issue of recusal or disqualification or mentioned the Court's sanctions ruling in *Brack*.

### E.1. Motion to Compel

In November 2022, the Court held another status conference. Counsel discussed their ongoing discovery dispute related to *Monell* materials, specifically the production of video footage related to instances of officers using force against other inmates in the mental health unit and redactions of incident reports produced pursuant to the stipulated protective order. The County objected to this discovery on the grounds of relevance, proportionality, and privilege. (ECF No. 21-2, PageID #394–95 & #396–97.) Because the parties had reached impasse, the Court ordered the County "to produce the fourteen videos responsive to Plaintiff's discovery requests" and directed Plaintiff to file a motion to compel directed at the additional discovery in dispute. (ECF No. 20, PageID #359.) Again, at this status conference, no counsel raised any issue of recusal or disqualification or mentioned the Court's sanctions ruling in *Brack*.

Plaintiff moved to compel, seeking production of 60 videos that corresponded to jail reports involving use-of-force incidents and the removal of confidentiality designations from videos Cuyahoga County had already produced. (ECF No. 21, PageID #362; ECF No 21-2, PageID #470–71.) Without raising any issue of recusal or disqualification, and without responding to Plaintiff's quotation from *Brack*, 599 F. Supp. 3d at 611, on page 12 of his brief (ECF No. 21-1, PageID #374), the County opposed the motion (ECF No. 22; ECF No. 37, PageID #947).

On December 7, 2022, before the close of briefing on the motion to compel, the Court held another status conference—its seventh—to address other outstanding discovery disputes.  At this conference, the Court ordered the County "to provide the Court and Plaintiff's counsel videos of the two incidents alleged in the complaint" to assist in evaluating and ruling on the motion to compel.  (ECF No. 23, PageID #576.)  On December 28, 2022, the Court granted Plaintiff's motion to compel.  (ECF No. 29, PageID #629.)  In doing so, the Court provided notice of the mandatory language of Rule 37, subject to certain exceptions, that the losing party in a discovery motion "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (*Id.*)  On that issue, the Court requested supplemental briefing from each party and scheduled a hearing on the matter for a month later, on January 27, 2023.  (*Id.*)  Cuyahoga County's supplemental brief addressed the parties' discovery disputes and the Court's ruling on the motion to compel but did not raise any issue of recusal or disqualification or mention the Court's sanctions ruling in *Brack*.

### E.2.  Motion to Disqualify

After 8:00 p.m. on the night before the hearing on attorney's fees—some 469 days after Mr. James filed suit and some 280 days after the Court's sanctions ruling in *Brack*—the County filed a motion to disqualify.  (ECF No. 33, PageID #703; ECF No. 37, PageID #939.)  As grounds for its motion, Cuyahoga County pointed to *Clay* and the Court's sanctions ruling in *Brack*.  (ECF No. 33, PageID #703.)  The next day, within an hour of the scheduled hearing, the County filed a motion to stay "all proceedings pending resolution of Defendant's Motion to Disqualify." (ECF No. 35,

PageID #935.)  The County added that it would "continue to produce discovery documents" during the proposed stay.  (*Id.*)

After deferring the hearing previously scheduled for that day, the Court afforded counsel time to address the issue of disqualification.  Cuyahoga County explained that Plaintiff's citation of the *Brack* sanctions ruling in the motion to compel briefing prompted the motion to disqualify.  (ECF No. 37, PageID #945–47.)  Elaborating on its timing, counsel represented that, in response to the *Brack* ruling, the County did not "do anything about it," but decided to seek disqualification only after the Court compelled the County to produce discovery materials.  (*Id.*, PageID #944–45.)  As to the substance of its argument, the County attributed the information provided in the opening sentences of the *Brack* ruling to extrajudicial sources, not facts "adduced at any evidentiary hearing."  (*Id.*, PageID #943.)  The County added that the amended complaint in *Clay* involves allegations that, consistent with Rule 11, prove that the undersigned has personal knowledge about the jail.  (*Id.*, PageID #941–42.)

Also, the County clarified that it directed its motion for a stay toward the resolution of fees under Rule 37.  (*Id.*, PageID #948.)  The Court supplemented the factual record with many of same facts recounted above and took the disqualification motion under advisement.  (*Id.*, PageID #950 & #968.)  Having now had sufficient time to review, research, and analyze the County's motion to disqualify, and to revisit the issues it raises, the Court proceeds to disposition of the motion.

## ANALYSIS

Motions for recusal or disqualification present sensitive issues that parties raise carefully and reluctantly, if at all.  By balancing the duty to sit with the requirement for recusal in certain limited circumstances, federal law seeks to ensure the legitimacy of the courts and that litigants have an impartial judge.  As relevant here, the statute provides:

> (a)  Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b)  He shall also disqualify himself in the following circumstances:
>
> > (1)  Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> >
> > (2)  Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
> >
> > (3)  Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy[.]

28 U.S.C. § 455.

"[A] judge is presumed to be impartial." *Scott*, 234 F. App'x at 352.  The moving party bears the "burden . . . to justify disqualification." *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016).  Under 28 U.S.C. § 455, the Court need not accept as true the allegations of the party seeking recusal and "may make the necessary factual findings and decide whether the facts warrant disqualification." *Scott*, 234 F. App'x

17

at 353–54.  "A recusal motion is committed to the sound discretion of the district judge."  *In re M. Ibrahim Khan, P.S.C.*, 751 F.2d 162, 165 (6th Cir. 1984) (citation omitted).

## I.    Timing

For nearly two years, while the undersigned presided over six other cases involving the county jail, issued substantive and dispositive rulings in those matters, and ruled on the sanctions motion in *Brack*, the County did not raise the issue of disqualification.    This case progressed through discovery and other pretrial proceedings for over a year before the County first raised any question of recusal or disqualification.    Only after Cuyahoga County found itself on the wrong side of a ruling on a motion to compel and faced a potential award of fees under Rule 37 did it move for disqualification.

This record and timing implicate whether the County waived or forfeited the issues raised in its motion.  (*See* ECF No. 38, PageID #981–-83.)   "[W]aiver and forfeiture are distinct concepts."  *United States v. Duval*, 742 F.3d 246, 255 (6th Cir. 2014) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)).  Waiver involves the intentional abandonment of a known right.  *Id.*  In contrast, forfeiture "is the passive failure to make a timely assertion of a right."  *United States v. Montgomery*, 998 F.3d 693, 698 (2021) (discussing the difference).

### I.A.    Waiver

Under the judicial disqualification statute, a party may waive an argument for recusal that "arises only under subsection (a)" provided the judge has fully disclosed on the record "the basis for disqualification."  28 U.S.C. § 455(e).  No party may waive

grounds for recusal arising under subsection (b).  *Id.*  The record of the Court's prior disclosures in early 2021 of the facts and circumstances underlying the County's motion suggest that it has waived any argument for disqualification under Section 455(a).  Indeed, the statute makes plain that a party may waive those grounds for disqualification.

Where, as here, a party seeks disqualification under both subsections (a) and (b) of Section 455, the statutory text creates an ambiguity.  Under Section 455(e), a party waives a ground for disqualification arising "only" under subsection (a). Therefore, joining an argument that a judge's impartiality might reasonably be questioned with an argument under Section 455(b) might make the argument not susceptible to waiver under Section 455(e).  Based on its research, the Court has identified no other case addressing the issue.  In such circumstances, the Court reads Section 455(e) as applying separately, such that a party waives arguments under subsection (a) but not subsection (b).  That is, a party cannot overcome a waiver by asserting a claim under both provisions.

Because the Court previously disclosed the issues forming the basis for the County's motion in *Roarty-Nugent* and *Brack*, cases involving the same counsel as *James*, the Court finds that the County waived any argument under Section 455(a), leaving only grounds for disqualification under Section 455(b).  Nonetheless, the Court will proceed as if there were no waiver out of an abundance of caution.  In any event, waiver would not reach the County's argument under Section 455(b).

### I.B.    Forfeiture

Forfeiture follows from "inexplicabl[e] delay" in raising even a meritorious defense, objection, or other matter "so untimely" that it is forfeited. *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 507 (6th Cir. 2022). Generally, a party may "forfeit non-jurisdictional objections." *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968 (6th Cir. 2018).

### I.B.1. Applicability of Forfeiture

Procedural rules apply to disqualification motions. *Cf. Mischler v. Bevin*, 887 F.3d 271, 271 (6th Cir. 2018) (per curiam). Section "455 require[s] that disqualification motions be timely." *In re Detroit*, 828 F.2d at 1167; *Cleveland v. Cleveland Elec. Illuminating Co.*, 503 F. Supp. 368, 378–79 (N.D. Ohio 1980); *see also Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997) (collecting cases). In fact, a party must normally raise grounds for recusal at the earliest moment after obtaining knowledge of facts supporting such a claim. *In re IBM Corp.*, 45 F.3d 641, 643 (2d Cir. 1995) (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987)). "A timeliness requirement forces the parties to raise the disqualification issue at a reasonable time in the litigation." *United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989).

Delayed motions for disqualification based on information known to the movant suggest that the party "is merely trying to avoid an impending adverse decision." *In re Detroit*, 828 F.2d at 1168. Holding back a recusal motion "as a fall-back position in the event of adverse rulings on pending matters" is as improper procedurally as it is professionally. *See In re IBM*, 45 F.3d at 643. "[W]hen a party

20

already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal," the motion is untimely. *United States v. Vadner*, 160 F.3d 263, 264 (5th Cir. 1998). In one case, *In re Detroit*, the Sixth Circuit declined to consider claims of bias from the district judge's "*ex parte* activities" because the "claims could have been raised two or three years earlier." 828 F.2d at 1168. Similarly, the Sixth Circuit has held untimely an argument for recusal raised for first time on appeal that was based on "a matter of public record." *Goward v. United States*, 569 F. App'x 408, 410–11 (6th Cir. 2014). To be sure, not every disqualification motion filed during pretrial proceedings is untimely. Sometimes, for example, a disqualifying event "springs from the facts adduced or the events occurring at trial." *See Liteky*, 510 U.S. at 551. But the party seeking recusal must demonstrate the timeliness of its motion.

### I.B.2. Timeliness of the County's Motion

On this record, the Court finds that each of the grounds the County asserts for disqualification is untimely. The undersigned appeared on the pleadings in *Clay* (a matter of a public record) for a brief period of time at the outset of that case some four years ago. Mr. James filed suit in October 2021, and Cuyahoga County first sought recusal 468 days later. (ECF No. 33.) During the intervening time, the Court held numerous conferences with counsel, and the County failed to raise the issue, even informally. In early 2021, in the *Brack* and *Roarty-Nugent* cases, the Court invited motions for disqualification or requests for recusal. After the Court's sanctions ruling in *Brack*, some 280 days elapsed before the County moved for disqualification. And the County had actual knowledge of the ruling in *Brack*. In addition to receiving

notice through the Court's electronic case filing system, Mr. Lambert stated on the record that he and his clients knew of that ruling at the time. (*See* ECF No. 37, PageID #944.) He represented that, [w]hen the *Brack* decision was issued," he "got a lot of calls" from "people very alarmed." (*Id.*)

But the County chose not to "do anything about it." (*Id.*) That choice forfeited its arguments. Rather than raising any issue, despite multiple opportunities over several months, the County sat on its arguments for disqualification until after the Court compelled it to produce discovery it resisted providing. (ECF No. 29.) Even then, the County waited a month to file its motion—until after the close of business the night before a hearing to determine whether an award of fees is appropriate under Rule 37(a). This timing speaks volumes about the reason the County filed its disqualification motion. So does counsel's admission that the County decided to seek disqualification only after learning that the Court "granted the plaintiff's motion to compel and that there was going to be a hearing on [attorney's fees and costs]." (ECF No. 37, PageID #944–45.)

*     *     *

The County offers a creative response. It says it did not move for recusal based on the *Brack* sanctions ruling itself. Rather, it says, the impetus for its motion was Plaintiff's citation of that ruling on page 12 of his motion to compel filed in November 2022. (ECF No. 33, PageID #708; ECF No. 37, PageID #946; *see* ECF No. 29-1, PageID #374.) That citation "crosse[d] a line" by "seek[ing] to appeal to this Court's previously voiced bias and prejudice." (ECF No. 33, PageID #708; ECF No. 37,

22

PageID #946.)  On this theory, Plaintiff's reference to *Brack* stirred up prejudice that, but for the citation, would otherwise have lain fallow.  Candidly, until Mr. Lambert articulated that theory at the hearing (ECF No. 37, PageID #946), the undersigned had not realized that Plaintiff cited the *Brack* sanctions ruling—perhaps because he cited it for the unrelated and unremarkable proposition that the County had a duty to preserve evidence predating this litigation, which the County does not dispute (ECF No. 37, PageID #945).  In any event, the ruling had no effect on resolution of the motion to compel in this case, which raised unrelated procedural issues regarding the discovery at issue.  (*See* ECF No. 29, PageID #617–29 (analyzing the motion's merits).)

Even if the County's theory that Plaintiff's citation of the *Brack* ruling provides an independent basis to seek recusal, its motion still arrived too late.  Plaintiff moved to compel on November 22, 2022.  (ECF No. 21.)  When Cuyahoga County opposed that motion two weeks later, it made no mention of recusal, disqualification, the *Brack* ruling, or Plaintiff's citation of it.  (ECF No. 22.)  On the day after the County opposed the motion, the Court held a status conference.  (ECF No. 23.)  Again, the County chose not to raise the issue.  (*Id.*)  However, it did file a different motion (to depose Mr. James), which the Court promptly granted.  (ECF No. 26; ECF No. 27.)  In short, in the 36 days between Plaintiff citing *Brack* and the Court ruling on the motion to compel, the County opposed that motion, filed an unrelated motion, and participated in a status conference—all without raising the issue of disqualification on any basis.

23

Then, after the Court compelled discovery, the County filed a supplemental brief directed at the availability of fees and costs under Rule 37.  (ECF No. 30.)  Still, it made no mention of disqualification or any other issue it asserts in support of its motion until after the close of business the night before the hearing.  This record shows that Cuyahoga County held back its arguments on disqualification as a fallback position to hedge against an adverse ruling.  Because the County "did not raise the issue until after" the Court issued "an adverse decision," it did so "too late." *Summers*¸ 119 F.3d at 921.  The County forfeited its arguments.  In exceptional circumstances, a court "may consider forfeited claims in civil cases." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1012 (6th Cir. 2022) (citation omitted).  The Court finds that no exceptional circumstances warrant excusing the County's forfeiture of its arguments for disqualification.

## II.  Apparent and Actual Bias

Even if not forfeited, the Court finds that the County's arguments for recusal lack merit.  At the outset, the Court notes that, unlike nearly all other claims, *see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020), Section 455 "place[s] the obligation to identify" the reasons to recuse "upon the judge himself," *Liteky*, 510 U.S. at 548.  In other words, the recusal statute contains a "self-executing" command that judges must follow "even in the absence of a party complaint." *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983).  As noted above, the Court discharged that obligation in this case and in each other case over which it presided, including six other cases involving allegations related to the county jail.  Because "recusal-based arguments uniquely implicate the integrity of the justice system," *Wells*, 873 F.3d at

24

1250, the Court explains the analysis by which it decided against recusal in this case and others involving Cuyahoga County.

"[A] federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Laird*, 409 U.S. at 837.  Therefore, unless a provision of federal law requires disqualification, the undersigned has a duty to preside even if doing so might be inconvenient.  *See, e.g.*, *Angelus*, 258 F. App'x at 842.  Potentially, two provisions of the recusal statute come into play, as the County notes.  A judge must recuse (1) "in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or (2) "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," *id.* § 455(b)(1).  The first addresses the objective *appearance* of impartiality, regardless of whether the judge actually cannot be fair and impartial.  The second lists specific factual circumstances that require recusal. *Liteky*, 510 U.S. at 548.

Under Section 455(a), judges apply an objective standard to determine whether to recuse.  In other words, the question is not whether a judge may preside impartially, but whether a reasonable person might question a judge's impartiality. *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013) (citation omitted).  This objectively reasonable person "is not a judge, because judges, keenly aware of the obligation to decide matters impartially, may regard asserted conflicts to be more innocuous than an outsider would." *Arkansas State Conf. NAACP*, 578 F. Supp. 3d at 1019 (quotation and citations omitted).  At the same time, this well informed,

25

thoughtful observer is not hypersensitive or unduly suspicious and has "knowledge of all the facts." *Adams*, 722 F.3d at 837; *In re Mason*, 916 F.2d at 386.  Put simply, "would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (quotations omitted).

Regarding Section 455(b), personal bias or prejudice demands "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.  "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger" are not enough.  *Id.* at 555–56.  Nor are "'hostile' comments." *Parker*, 837 F. App'x at 347 (quoting *Liteky*, 510 U.S. at 555).  "[C]laims of bias based on opinions formed during current or prior proceedings face an 'uphill battle.'" *Id.* at 346 (quoting *Burley*, 834 F.3d at 616).

After considering Section 455 and the case law interpreting it, the undersigned decided to preside when the case was filed in October 2021 because he has no personal interest in the outcome this case, no personal favoritism or antagonism for either party, and no personal knowledge of disputed evidentiary facts.  An objective, reasonable observer fully informed of the facts would make the same determination. None of the circumstances underlying the County's motion, individually or collectively, gives rise to an apparent or actual bias under Section 455.  The Court addresses each of those arguments in turn.

### II.A.  The *Brack* Ruling

The Court's previous sanctions ruling in *Brack* does not provide a basis for questioning the impartiality of the undersigned.  Nor does it express a personal bias

toward the County or any of its officials or employees or include personal knowledge of disputed evidentiary facts.

### II.A.1. Objective Appearance

In the introduction to a 63-page ruling, *Brack* provided context to orient a reader.  In doing so, it noted that, while public opinion had drawn a "moral and political" conclusion, the courts had yet "to determine the legal consequences and responsibility, *if any*, relating to maladministration at the jail." *Brack*, 599 F. Supp. 3d at 611 (emphasis added).  That legal question, of course, is the only one that concerns the courts.  Other than the issue of sanctions at issue in that ruling, *Brack* left open all legal questions regarding the jail and referenced only "[p]ublic discourse." *Id*.  Far from prejudging the County's potential liability, *Brack* made clear that "the parties—and, frankly, the Court—will never know whether Mr. Brack's claims had merit." *Id.* at 641.

When discussing the condition of the jail and its administration—matters of public concern in the community regularly in the news, *see Mosholder v. Barnhardt*, 679 F.3d 443, 450 (6th Cir. 2012) ("Correct operation of [a prison] is a matter of public concern.")—the Court did not blame any actor, much less a party to this case.  To the contrary, it expressed the view that public discourse tends to blame the County but suggested that others might come in for criticism as well.  *Brack*, 599 F. 3d at 611 (noting that there is "plenty of blame to go around").  None of those statements prejudges any particular set of facts or actor.

Judges are expected to "sit in successive trials involving the same defendant" and need not feign ignorance of "what they learned in earlier proceedings." *Liteky*,

510 U.S. at 551.  Even before the *Brack* ruling, the U.S. Marshal's Report was part of the record in both *Roarty-Nugent* and this case.  (ECF No. 1-2, PageID #95.)  That report supplied knowledge that the undersigned "necessarily acquired in the course of proceedings" with the County.  *Liteky*, 510 U.S. at 551.  Therefore, the contents of that report do not form "knowledge that the [undersigned] ought not to possess."  *Id.* at 550.  Objectively, reasonable observers who read the Marshal's Report would not describe the sentences in *Brack* as "undeserved" or "excessive in degree."  *Id.*  As a matter of law and fact, the undersigned has not adopted the Marshal's Report as true in any case or made any determination regarding its admissibility.  The County will have a full and fair opportunity to litigate those issues if and when appropriate.  By the same token, the Court need not act as if the report does not exist or has not been publicly available for years.  Nor is the Court "required to exhibit a naiveté from which ordinary citizens are free."  *Department of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (quoting *United States v. Stanchich*, 550 F. 2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)).

Finally, the few opening sentences in the *Brack* ruling to which the County points address general matters about the jail, not specific allegations in any particular case.  Certainly, they say nothing about alleged use of excessive force in this or another case.  To the extent they speak to conditions of confinement, one has no bearing on the other.  *Hudson v. McMillian*, 503 U.S. 1, 11 (1992).  Whatever the County thinks of the Court's ruling in *Brack*, it identifies no "evidence that [the Court's] view of the merits was affected" in this case.  *United States v. Osborne*, 807

28

F. App'x 511, 526 (6th Cir. 2020). *Roarty-Nugent* proves that point. In May 2022, less than a month after issuing the *Brack* opinion, the Court ruled in favor of the County on a discretionary motion in which the plaintiff advanced a colorable argument. *Roarty-Nugent v. Cuyahoga Cnty.*, No. 1:20-cv-1025, Opinion and Order (N.D. Ohio May 16, 2022); *accord Parker*, 837 Fed. Appx. at 347 n.4 (noting that the court's "downward variance" in sentencing suggested "that it harbored no ill-will toward" the defendant seeking recusal).

An objective observer, fully apprised of all this information, would not come away from the introduction to the ruling in *Brack* questioning the undersigned's impartiality in this case. Put simply, the *Brack* ruling did not "display a deep-seated . . . antagonism that would make fair judgment impossible" going forward. *Liteky*, 510 U.S. at 555.

### II.A.2. Personal Knowledge

Next, the County argues that the Court made "erroneous findings concerning" the jail based on information that could not have been based on evidence or the record and, therefore, must have been the product of personal knowledge. (ECF No. 33, PageID #711–13 (quotations omitted).) To the contrary, the Court's ruling in *Brack* reiterated allegations made in that case's complaint. (*See, e.g.*, *Brack v. Budish*, Case No. 19-cv-1439, Am. Compl. ¶¶ 8, 25, & 40.) Even then, those statements never purported to be findings of fact. Nor could they have been in the procedural posture of the motion for sanctions. As noted, those opening statements provided context to orient the reader to the factual background against which Mr. Brack's allegedly

29

retaliatory termination took place and to the motion for sanctions against Mr. Brack's counsel.

To implicate Section 455(b)(1), the judge must have "personal knowledge of disputed evidentiary facts." The undersigned has none. In multiple cases over which the undersigned has presided, a plaintiff has sued the County, various public officials, and others. The information presented to the Court in those cases is knowledge "properly and necessarily acquired in the course of proceedings." *Liteky*, 510 U.S. at 551. It is not the sort of personal knowledge that requires recusal. *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005).

By way of analogy, in recent years, the Supreme Court reviewed cases involving one of the Boston Marathon bombers, *United States v. Tsarnaev*, 142 S. Ct. 1024 (2022), and the D.C. Sniper, *Mathena v. Malvo*, 140 S. Ct. 919 (2020) (voluntarily dismissed). Like most Americans, the Justices—to whom 28 U.S.C. § 455 applies—likely learned some information about each of these cases from the news. In these and many other cases, the sort of knowledge available to the general public did not constitute the type of personal knowledge requiring disqualification. So too here.

> Every member of this court, every member of any court, every judge, when he hears a case or writes an opinion must form an opinion on the merits and oft times no doubt an opinion relative to the parties involved. But this does not mean that the judge has a "personal bias or prejudice." If it did, the disqualification of judges would be a matter of every-day rather than the unusual and extraordinary occurrence which the statute is designed to meet.

*Tucker v. Kerner*, 186 F.2d 79, 84 (7th Cir. 1950). At bottom, the County's claim of disqualifying personal knowledge rests on speculation. The undersigned has no such personal knowledge.

### II.B.  The *Clay* Representation

The undersigned's limited involvement at the outset of the *Clay* case did not, as a matter of fact, supply personal knowledge of disputed evidentiary facts regarding the jail.  As noted, in that representation, the undersigned participated in no factual investigation and acquired no facts from the County that the County did not promptly make public.  Legally, "claims based on excessive force and claims based on conditions of confinement" are "different in kind."  *Hudson*, 503 U.S. at 11.  This case involves allegations of excessive force, not conditions of confinement.  For all these reasons, Section 455(b)(1) does not require disqualification.

Although the County rests its argument for disqualification based on *Clay* on personal knowledge under Section 455(b)(1), the Court addresses Section 455(a) as well, out of an abundance of caution.  Rarely will past representations of a nonparty in a different case create an objectively reasonable basis to question a judge's impartiality.  As a textual matter, Section 455(a) does not "implicitly eliminat[e] a limitation explicitly set forth in § 455(b)."  *Liteky*, 510 U.S. at 553.  The Supreme Court illustrated that point with the example that a party's "fourth degree relationship to the judge" does not compromise the appearance of impartiality for purposes of subsection (a) where subsection (b)(5) expressly requires recusal where a party is "within the third degree of relationship."  *Id.*; 28 U.S.C. § 455(b)(5)(i).  In the same vein, subsection (b)(2) requires recusal "[w]here in private practice [the judge] served as lawyer *in the matter in controversy*."  *Id.* § 455(b)(2) (emphasis added.) Here, the undersigned served as counsel in a different, unrelated case representing

31

those who are not parties here.  Nor did *Clay* involve the alleged uses of force that form the basis of Mr. James's claims.

If the rule were otherwise, any judge who takes the bench after practicing law would not be able to preside in any matter raising an issue or involving a party against which he previously advocated in practice.  Such a standard overlooks the role of counsel as an advocate on behalf of a client, which may require the lawyer to take positions divorced from, even antithetical to, the lawyer's personal views.  *See, e.g.*, Mark Joseph Stern, *Prominent Anti-Trump Attorney Asks the Supreme Court to Let Companies off the Hook for Child Slavery*, Slate (Dec. 1, 2020).  A contrary rule would also present obvious workability problems and perverse incentives for counsel.  Section 455(b) does not reach that far; it draws the line at "the matter in controversy."  28 U.S.C. § 455(b)(2).

### II.C.  State Court Service

In reply, the County asserts that the undersigned's service on the Cuyahoga County Court of Common Pleas provides an additional basis for disqualification.  (ECF No. 40, PageID #1041.)  As noted above, the undersigned first disclosed this service as a potential ground for recusal more than two years ago, in January 2021.  Further, to the best of the undersigned's recollection, none of the briefings he or other members of that court received concerned alleged uses of force.  Those briefings involved the County's progress toward construction of a new jail and the response to the pandemic.  They provided no information relating to this case or to any party's claims or defenses.  Such generalized information, unrelated to this or any other case,

fails to provide personal knowledge requiring disqualification under Section 455(b)(1).

## II.D.  Cumulative Appearance

None of these arguments—the *Brack* ruling, the *Clay* representation, and service on the State court bench—taken individually provides an objective observer fully informed of the facts and relevant law reason to question the ability of the undersigned to preside impartially.  Considering their cumulative effect does not change this determination.

On both the State and federal benches, presiding over cases involving institutional litigants such as Cuyahoga County is unavoidable.  It is also involuntary.  That the undersigned has presided over cases, and through those proceedings acquired knowledge about the County, does not compromise the appearance of impartiality under Section 455.  Adding to the equation one brief representation against the County in private practice that ended before discovery began does not alter the outcome.  An objective observer could not help but notice that the County has fared reasonably well in this Court.  That has nothing to do with the identities of the parties and everything to do with the merits of their respective claims and defenses.  That same observer would also note that the County did not raise any ground for disqualification until after an adverse ruling.

## CONCLUSION

For all these reasons, Cuyahoga County's motion for disqualification is untimely and without merit.  Therefore, recusal is improper, and the undersigned has

a duty to sit and preside over this case.  The Court **DENIES** the County's motion for disqualification.  (ECF No. 33.)

     **SO ORDERED.**

Dated:  March 10, 2023

                              _____

                                    J. Philip Calabrese
                                    United States District Judge
                                    Northern District of Ohio