IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEONTE JAMES, | ) CASE NO.: 1:21-cv-0195801954 |
| Plaintiff, | ) |
| | ) JUDGE: J. PHILLIP CALABRESE |
| vs. | ) |
| CUYAHOGA COUNTY, OHIO, et al. | ) |
| Defendants. | ) |

**DECLARATION OF PHILIP CHRISTOPHER**

I, Philip Christopher, in my capacity as Associate Warden for the Cuyahoga County Correctional Center ("CCCC"), hereby declare and state as follows:

1. I have been employed by the Cuyahoga County Sherriff's Department since September 1999. I am currently an Associate Warden and have been in this position since September 2018. Prior to this, I was an Investigator Sergeant from 2009 to 2018. In this capacity, I have personal knowledge of the policies and practices o the CCCC relating to the use of surveillance cameras and body cameras by the CCCC, and the preservation of surveillance camera videos and body camera videos of use of force incidents.

2. In my role as Investigator Sergeant, I would, among other tasks, provide direction to jail investigators and on occasion I would conduct investigations into situations where use of force was used against an inmate or when an inmate was grieving inmate discipline under direction of the Warden or Associate Warden.

3. Use of Force is a technical term indicating that there was physical contact between a CCCC officer and an inmate. This definition broadly ranges from instances from taking an inmate by the arm and directing them to any area, to instances where

1

officers were trying to gain control over a combative inmate, preventing a suicide attempt or during a medical emergency.

*First Generation Body Cameras*

4. Generally, from 2017 through May 2019, the CCCC was using "first generation" body worn cameras which were typically under the "Muvi" brand name. There were a limited number of body cameras issued, all Sergeants and Corporals received them, and some Special Response Team members had access to use body cameras. A limited number of first generation cameras continued to be used after May 2019, for a short time, while the new Axon Body Camera system was being implemented.

5. Prior to 2018, body camera footage was managed and stored by the CCCC on a local external hard drive located in the 4th floor Sergeant's Office. It was the CCCC's practice that any employee using a body camera was required to upload and save any body camera video capturing an incident using "use of force" on an inmate to the hard drive by the end of their shift or the following day. All of the body camera videos have been uploaded and, are kept and preserved on "V" drive by the Cuyahoga County Department of Informational Technology.

*Axon Body Camera System*

6. On or about May 7, 2019, the County purchased the Axon body camera system. Footage from Axon body cameras is uploaded into Evidence.com, a cloud-based storage system, and all body camera videos are kept and preserved, and accessible as may be necessary in investigating any use of force incidents.

*Milestone Surveillance System*

2

7. The Cuyahoga County Corrections Center is equipped – in various areas of the County Jail – with surveillance cameras that record events inside the County Jail as a regular practice in the ordinary course of business.

8. The number and location of surveillance cameras in the jail have increased from 2015 to the present, and this technology has also improved over time.

9. Generally, surveillance cameras are continuously running, but for recording purposes they are motion activated.

10. Surveillance cameras will not capture incidents where there is not a camera positioned in the area where an incident occurred, the sensitivity level of the motion indicator on the surveillance camera did not detect motion, or a surveillance camera was malfunctioning.

11. Surveillance video recordings are stored on the Milestone Surveillance System and are kept until copied or they are automatically overwritten due to storage capacity issues, which roughly equates to around 30 days after the incident.

12. During the timeframe at issue, from October 2017 through October 2019, it was the general practice for the jail investigators to collect all reports, including use of force reports, at the beginning of each day Monday through Friday. If a use of force incident was identified in a report or otherwise brought to their attention, the jail investigators, and the platoon sergeant who was assigned to that shift, would review the surveillance camera footage while it was still accessible on the system. If the surveillance cameras were reviewed and did not show footage of the alleged incident, surveillance camera footage was not pulled and preserved. If the surveillance camera footage depicted reasons for further investigation, then a request was sent to the Security and Research Group of the Cuyahoga County

3

            Department of Information Technology to pull and preserve the surveillance video, and a copy of the surveillance camera footage was sent to the person at the jail who made the request.

13. Since January 2019, CCCC now requests that all surveillance videos for the date and time, and the location where the use of force incident occurred, should be pulled and preserved, regardless of whether it showed the incident in question.

**Deonte James Litigation**

14. It is my understanding that Plaintiff requested Combination Reports for Use of Force involving an inmate from October 19, 2017 to October 27, 2019. In order to provide the response to this request, the CCCC assigned two corporals to work fulltime to gather these reports. This project started on February 14, 2022 and ended on April 20, 2022. This search resulted in twelve bankers boxes full of reports consisting of 11,708 pages. Plaintiff's counsel inspected these boxes and selected 5,469 pages of reports for copying.

15. Plaintiff's counsel reviewed the Use of Force reports and requested body camera and surveillance camera footage for sixty (60) incidents ranging from attempted suicides to cell extractions as their "first round" of video requests. It is my understanding that three searches were conducted for body camera videos and surveillance videos by the IT Department and 196 videos have been provided to Plaintiff's counsel in response to their designated criteria.

16. Generally, if an incident occurred in an inmate's cell, there will not be surveillance camera footage because the surveillance cameras are not set up to record inmates in their cells due to privacy concerns.

17. It is my understanding that the search for body camera videos and surveillience videos did not locate any video of the following incidents:

Adbulhagg, Muhammad 8/5/18
Hamilton, Deonte 3/24/18
Hamm, Joshua 2/3/2018
Rahmon, Jamal 11/27/17
Rice, Mario 10/1/18
Smith, Nicole 11/29/17
Sutton, Adolphus 3/9/18
Tell, James 8/5/18
Vaughn, Kenneth 12/18/17
Viattardi, Matthew 10/8/18
Williams, John 7/14/18

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

*A/w* *Philip Christopher*
PHILIP CHRISTOPHER, Associate Warden of the
Cuyahoga County Correctional Center