IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DEONTE JAMES, | CASE NO. 1:21-cv-01958 |
| Plaintiff, | JUDGE J. PHILIP CALABRESE |
| vs. | |
| CUYAHOGA COUNTY, *et al.*, | |
| Defendants. | |

**DEFENDANT CUYAHOGA COUNTY'S RESPONSE TO
PLAINTIFF'S PETITION FOR ATTORNEY FEES (DOC.#61)**

In its Opinion and Order, dated May 2, 2023, this Court ruled that Plaintiff was entitled to recover his "<u>reasonable</u> expenses, including attorneys' fees, incurred in making the motion to compel discovery." (Doc.#57, Order, pg. 1, PageID#1443) (emphasis added). While a review of the relevant case law shows that the filing of a single motion to compel normally costs in the range $5,000-$10,000 in most situations, Plaintiff's attorneys in this case have used this opportunity to request that the Court award **$45,977.00** in attorney fees and expenses, including almost $15,000.00 for the submission of the May 17th fee petition and another $4,325 for an anticipated Reply Brief that is not even authorized by the May 2nd Order. (Doc.#61, Fee Petition, pg. 2, PageID#1466); (Doc.#57, May 2nd Order, pg. 11, PageID#1453). As a result, Plaintiff's counsel seeks to recover compensation for over 94 hours of attorney time – 2.3 weeks of attorney time – at hourly rates that are almost double the hourly rates that are recoverable under the Prison Litigation Reform Act ("PLRA"). In so doing, they seek to collect more in compensation for a single discovery motion than the total amount of damages that the Plaintiff would likely be able to recover if this case proceeded to trial on his use of pepper spray claim.

In this regard, Plaintiff's May 17th Fee Petition fails to cite a <u>single</u> case in which the federal courts awarded more than $45,900 for the filing of a motion to compel discovery. Indeed, when confronted with a similar request for $38,409.97 that was submitted by the plaintiff's attorneys in *Thomas v. Bannum Place of Saginaw*, 421 F.Supp.3d 494 (E.D. Mich. 2019), *aff'd*, 2019 WL 13194618 (E.D. Mich. Dec. 9, 2019), a United States Magistrate Judge in the Eastern District of Michigan held that the request for over $38,000 in fees was "outrageously excessive," and that he had never seen such an "exorbitant fee request" during his time on the bench or his 24-years of practice as a civil trial attorney handling complex litigation. *Id.* at 498-499. Thus, in order to "discourage requests for outrageously excessive fees," the court in *Thomas* denied the request <u>altogether</u>, and vacated the prior award of fees and expenses under Rule 37(a)(5). *Id.* at 499.

Here, as in *Thomas*, the amount of attorney fees is also excessive and "totally out of line with the nature of the case" and "the needs being addressed by the underlying motion to compel." *Id.* at 498-499. Indeed, as discussed more fully below, there are several reasons why this Court should deny and/or reduce the attorney fee request:

(1) First, the fees requested should be denied or reduced because they include the fees and expenses incurred in "litigating their entitlement to fees," which are <u>not</u> recoverable under Rule 37(a)(5). *Meyer v. Bank of America, N.A.*, No. 2:18-cv-218, 2019 WL 7820519, *4 (S.D. Ohio Mar. 8, 2019).

(2) Second, the hourly rates of $500 and $425 per hour greatly exceed the maximum hourly rate of $237 imposed by the Prisoner Litigation Reform Act ("PLRA") (which Plaintiff's counsel knew would be applied when they filed this action). *See Melendez v. Dixon*, Case No. 3:20-cv-1023, 2023 WL 3073639, *2 (applying PLRA rate in awarding fees under Rule 37(a)(5)). Moreover, they exceed the "median" hourly rate of $250 set forth in the 2019 OSBA survey for attorneys in a suburban Cleveland office with similar years of experience. *Rohaley and Sons Automotive, Inc. v. Travelers Casualty Ins. Co.*, No. 1:20-cv-2700, 2022 WL 18863788, *2 (N.D. Ohio Nov. 21, 2022) (applying median rates in OSBA 2019 survey to fees awarded under Rule 37).

    (3)    Third, the Fee Petition is excessive because none of the attorney time was billed by associates. Rather, *all* of the time was billed by a partner or "of counsel" at significantly higher rates. As a result, the fees should be significantly reduced to account for this "top heavy" billing. *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 596 (6th Cir. 2008).

Accordingly, for all of these reasons and for the additional reasons set forth below, the Court should deny and/or significantly reduce the amount of attorney fees requested by Plaintiff's counsel in connection with filing the motion to compel under Rule 37(a)(5).

## LAW AND ARGUMENT

**I.    THE FEE PETITION SHOULD BE DENIED OR SIGNIFICANTLY REDUCED BECAUSE THE TOTAL AMOUNT OF ATTORNEY FEES REQUESTED IS EXCESSIVE IN LIGHT OF THE NATURE OF THE MOTION TO COMPEL AND THE AMOUNT IN CONTROVERSY.**

The attorney fee award at issue in this case is based upon Fed. R. Civ. P. 37(a)(5), which provides for the recovery of "the movant's reasonable expenses incurred in making the motion [to compel], including attorney's fees." *Id.* While the award of expenses under Rule 37(a)(5) are rare, a review of recent case law relating to attorney fees awarded under Rule 37 confirms that the attorney fees and expenses associated with filing a single motion to compel discovery generally are *far less* than the $45,977.00 in attorney fees and expenses requested by the Plaintiff in this case. *See, e.g., Rohaley and Son Automotive, Inc.*, 2022 WL 18863788, at *1 (awarding $10,012.60); *Meyer*, 2019 WL 7820519, at *4 (awarding $4,832.50); *United States v. Bailey*, No. 1:11-cv-059, 2012 WL 700289, *3-4 (S.D. Ohio Mar. 1, 2012) (awarding $2,847.50); *Melendez*, 2023 WL 3073639, at *5 (awarding $5,680.89); *Weaver v. Stringer*, No 1:18-00052-N, 2019 WL 1495279 (S.D. Ala. Apr. 4, 2019) (awarding $7,265.40) Thus, when confronted with a fee request of $38,409.97 in *Thomas*, the magistrate judge responded by finding that the amount requested was "outrageously excessive" and <u>denying</u> the entire fee request. *Id.,* 421 F. Supp.3d at 498-499.

3

In this regard, the court's reasoning in *Thomas* is instructive because it recognizes that the "reasonableness" of attorney fee awards must be viewed in the context of the "nature of the case" and the amount in controversy. The Supreme Court has long recognized the amount of damages at issue should be considered in determining the reasonableness of attorney fee awards under fee-shifting statutes. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Hensley v. Eckerhart*. 461 U.S. 424, 430 (1983). Thus, in *Thomas*, the court found that a fee request for $38,409.97 was "outrageously excessive," in part, because it was "totally out of line with the nature of the case" and "the needs being addressed by the underlying motion to compel." *Id.* at 498-499.

As in this case, the plaintiff's attorneys in *Thomas* sought compensation for a significant amount of attorney time – 104.85 hours representing 2.5 weeks of attorney time – which the court determined was greater than the amount of time that it ordinarily takes to file "motions for summary judgment, which are dispositive of entire cases" and "often cost less than what Plaintiff now requests in connection with this effort to compel responses to two sets of discovery requests." *Id.* at 496. Indeed, the court in *Thomas* observed that the plaintiff's attorneys were likely billing the case "on a contingent fee basis" because "[i]t is hard to imagine an invoice of this size being passed on to the actual client with an expectation of payment, or that a personal injury client would actually pay it." *Id.* at 498, fn. 3. Here, as in *Thomas*, the plaintiff's counsel similarly incurred over 94 hours of attorney time – almost 2.3 weeks of attorney time. Moreover, as in *Thomas*, they admit that they are litigating this case on a contingent fee basis (Doc.#61-2, Sletvold Decl. ¶ 8, PageID#1498), and thus have not likely billed James – who is still a prisoner in federal custody – for any of the fees that they are requesting the County to pay. Indeed, given the amount of damages that are potentially recoverable by James, it is likely that a private client would object to receiving a bill for over $45,900 for filing a discovery motion that likely would exceed the damages that

4

may be awarded by a jury. Thus, as in *Thomas*, the fee request should be denied or substantially reduced because it "is totally out of line with the nature of this case or the needs being addressed by the underlying motion to compel." *Id.* at 499.

II. **THE COURT SHOULD DENY OR SUBSTANTIALLY REDUCE THE AMOUNT OF FEES AND EXPENSES REQUESTED BY PLAINTIFF FOR LITIGATING THEIR ENTITLEMENT TO FEES AND PREPARING THE FEE PETITION.**

One of the other reasons why the Plaintiff's fee request is excessive is because it impermissibly seeks to recover the attorney fees incurred in litigating their entitlement to fees and in preparing their Fee Petition. *See Meyer*, 2019 WL 7820519, at *4 (holding that plaintiff was not entitled to the "attorney's fees incurred litigating their entitlement to fees" under Rule 37(a)(5)). As the U.S. Supreme Court has held, the American Rule – which provides that "[e]ach litigant pay his own attorney's fees, win or lose, unless a statute or contract provides otherwise" – is "deeply rooted in the common law," and thus "this Court will not deviate from it 'absent explicit statutory authority.'" *Baker Botts, L.L.P. v. Asarco, LLC*, 576 U.S. 121, 126, 135 S.Ct. 2158, 192 L.Ed.2d 208 (2015) (emphasis added). Here, under the plain language of Rule 37(a)(5), an award of reasonable expenses is expressly limited to the attorney fees and expenses incurred in the "making of the motion to compel," which, according to the chart on page 2 of Plaintiff's Fee Petition, total $13,712.50. (Doc.#61, Fee Petition, pg. 2, PageID#1466). Yet, in this case, Plaintiff requests an additional $32,265.00 – $13,032.50 for "fee entitlement briefing and hearing" and additional $19,232.50 for the "fee petition supporting lodestar award," the "fee petition reply," and "fee expert expense." (*Id.*)

While the Sixth Circuit held in *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 493 (6th Cir. 2014), that a party may recover the cost of preparing a fee application under Rule 37(c)(2), this ruling was issued in 2014 before the Supreme Court's 2015 ruling in *Baker Botts*. As the

5

district court recently concluded in *Weaver*, *supra*, "whatever persuasive authority that authority might have had on the issue," it "has been diminished in light of the Supreme Court's more recent admonition in *Baker Botts* that courts 'should not deviate from the American Rule absent explicit statutory authority.'" *Id.*, 2019 WL 1495279, at *5, n.10 (citing *Baker Botts*). Thus, in both *Weaver* and *Meyer*, the courts ruled that the recovery of expenses under Rule 37(a)(5) should be limited only to the "making of the motion to compel," and not to the time spent in "litigating the entitlement to fees." *Meyer*, 2019 WL 7820519, at *4 (awarding $4,832.50 under Rule 37(a)(5), but denying the fees incurred "in litigating their entitlement to fees"); *see also Weaver*, 2019 WL 1495279, at *5-6 (awarding $7,265.70 for making the motion to compel, but denying the fees requested for "[t]ime spent litigating a fee award under Fed. R. Civ. P. 37(a)(5)(A)").

Indeed, even if "fees for fees" were recoverable under Rule 37(a)(5), there is no authority that would permit the Plaintiff to recover *substantially more* in attorney fees for the fee petition than incurred in making the underlying motion to compel. In *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), the Sixth Circuit held that the fees incurred in litigating "the attorney fee case after the original case is over" ordinarily should not be "out of proportion" to the fees incurred in litigating the "main case." *Id.* at 151. Although the Sixth Circuit later abrogated the presumptive 3% cap on "fees for fees" in *NE Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 692 (6th Cir. 2016), it still has continued to follow the general principle that the fees awarded for litigating the "attorney fee case" should not be "disproportionate" to the fees awarded for the "main case." As a result, the Sixth Circuit has continued to examine whether the fees requested for the attorney fee case are disproportionate to the fees awarded for the main case, and has actually <u>reduced</u> such fees in cases where they were 33% or 20% of the fees awarded for the main case. *See, e.g., Pablo Lorenzo v. Barr*, 806 Fed.Appx. 431, 437 (6th Cir. 2020) (holding that 22.7 hours

6

incurred for fee motion was "disproportionate and thus unreasonable" because it was "approximately one third of the total time spent on this case"); *see also Farley v. Eaton Corp.*, 697 Fed. Appx. 450, 451 (6th Cir. 2017) (holding that fees requested for fee application were "grossly excessive" because they were 20% of the fees requested for the main case).

Here, as previously discussed, the Fee Petition requests $13,712.50 for making of the motion to compel. (Doc.#61, Fee Petition, pg. 2, PageID#1466). The fees requested for litigating "entitlement" to fees and preparing the fee petition are *substantially greater – **over 235% greater*** – than the fees requested for making the motion to compel. Indeed, even if the Court were to treat the supplemental "fee entitlement briefing and hearing" as part of making the "motion to compel," the fact remains that the total amount of attorney fees incurred for the fee petition alone is $19,232.50, which is more than **140%** of the fees requested for the motion to compel and **72%** of the fees requested for briefing both the motion to compel and fee entitlement issue. Accordingly, even if "fees for fees" were recoverable under Rule 37(a)(5), the Court nevertheless should substantially reduce the amount of fees and expenses requested to no more than 10% of the fees requested for making of the motion to compel, which would be only $1,371. *See, e.g. Pablo Lorenzo*, 806 Fed. Appx. at 437 (reducing fees spent on EAJA fee application to 10% of the fees incurred on the merits of the appeal).

**III. THE COURT SHOULD REJECT AND SUBSTANTIALLY REDUCE THE HOURLY RATES CHARGED BY PLAINTIFF'S ATTORNEYS.**

Another reason why the Plaintiff's fee petition is excessive in that it seeks to charge extraordinarily high hourly rates – $500.00 for Ashley Sletvold and $425 for Jessica Lavoie – that are well above the maximum rate of $237 per hour that may be charged under the Prison Litigation Reform Act ("PLRA") and the median rates of $250 per hour in the 2019 OSBA survey attached to the Plaintiff's Motion. We address each argument in turn:

**A.     The Court Should Not Approve Any Hourly Rates That Are Higher Than The Maximum Rates Imposed By Congress Under The PLRA.**

On account of the "outsized share of filings" by prisoners in the federal courts, Congress enacted the Prison Litigation Reform Act in 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e, to control the excessive costs associated with Section 1983 claims filed by prisoners. *Jones v. Bock*, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citations omitted). In so doing, Congress adopted a broad definition of "prisoner" to include "<u>any</u> person incarcerated or detained in <u>any</u> facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." § 1997e(h) (emphasis added). Thus, it is well-established that a pretrial detainee is a "prisoner" under the PLRA. *Kalinowksi v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004) ("Pretrial detainees are 'prisoners' for purposes of the PLRA because they are in custody while 'accused of . . . violations of criminal law'").

In determining whether the PLRA applies, the federal courts generally look to whether the plaintiff was a "prisoner," as defined by the PLRA, at the time when the lawsuit was originally filed. *Cox v. Mayer*, 332 F.3d 422, 424 (6th Cir. 2003); *Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009); *see also Harris v. Garner*, 216 F.3d 970, 975 (11th Cir. 2000) ("It is the confinement status at the time the lawsuit 'brought,' i.e., filed, that matters."). Here, as demonstrated by a certified copy of the arrest and booking record attached hereto as Attachment #1, it is undisputed that Deonte James was in the custody of the Stark County Jail from October 8, 2021 to November 16, 2021, when this litigation was originally filed. (*See* Doc.#62-1, Certified Copy of Stark County Jail Records for Deonte Raymond James, PageID#1551). Thus, there is no question that Deonte James is a "prisoner" within the meaning of the PLRA. *Napier v. Laurel Cnty.*, 636 F.3d 218, 221, n.1 (6th Cir. 2011) ("the only question is: 'Is the plaintiff a prisoner

8

confined in a jail, prison, or other correctional facility?'" at the time when the lawsuit was originally filed) (citing *Cox*, 332 F.3d at 424) (applying the Act to a plaintiff who was no longer incarcerated because he was a prisoner when he filed suit).

This is a critical point because Plaintiff's counsel knew or should have known at the outset of this litigation that James was a "prisoner" whose Section 1983 claim was subject to the PLRA, and that they therefore would not be able to collect any attorney fees from Cuyahoga County at hourly rates that were higher than the hourly rates imposed by the PLRA. In particular, 42 U.S.C. § 1997e(d) provides: (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title," . . . (3) "[n]o award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel." *Id.* As set forth in *Melendez*, the PLRA's rates are based upon the hourly rates established by the Criminal Justice Act Guidelines, available at https://www.uscourts.gov/rules-policies. The CJA rate was $158 per hour in 2022 and $164 in 2023. https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-230-compensation-and-expenses#a230_16. Thus, under the PLRA, the hourly rates were $237 in 2022 ($158 x 1.5) and $246 in 2023 ($164 x 1.5). *See Melendez*, 2023 WL 3073639, at *1-2 (applying PLRA rate to fees awarded under Rule 37(a)(5)); *Burks v. Stickney*, Case No. 9:16-CV-0759, 2018 WL 582583, *5 (N.D.N.Y. Jan. 29, 2018) (applying PLRA rates in awarding discovery sanctions).

Although there are a few district courts that have held that the PLRA's hourly rates do not apply to attorney fees awarded under Rule 37, *see Medina v. Bother*, Case No. 15-cv-1955, 2019 WL 4370239 (S.D. N.Y. Sept. 12, 2019); *Farris v. Kohlrus*, Case No. 17-cv-3279, 2019 WL 13020389 (C.D. Ill. Aug. 13, 2019); *Scott v. Clarke*, Case No. 3:12-cv-00036, 2014 WL 1463755

9

(W.D. Va. Apr. 15, 2014), none of the courts of appeals, to our knowledge, have ever reached this conclusion, and the Ninth Circuit has affirmatively held that the PLRA's rates apply to any "contempt or discovery motions" that are "directly related to [a prisoner's] underlying § 1983 cause of action."  Webb v. Ada County, 285 F.3d 829, 837 (9th Cir. 2002).  As the Ninth Circuit explained in *Webb*, one of the purposes of the PLRA was "to minimize the costs – which are borne by taxpayers" associated with federal court litigation filed by prisoners.  Id.  "Given this purpose," therefore, the Ninth Circuit determined that "it is unlikely that Congress intended that only *part* of the attorney's fees awarded in a prisoner lawsuit be subject to the PLRA cap." Id. (emphasis in original).  Thus, the Ninth Circuit held that "Congress' desire to reduce the costs of these lawsuits would not be furthered" if the federal courts did not apply "the PLRA rates to fees related to motions for contempt and discovery sanctions." Id.

Here, it is undisputed that the motion to compel was directly related to Plaintiff's Section 1983 *Monell* claim alleged against the County.  Indeed, even if the PLRA did not apply to fees awarded under Rule 37, the fact remains that it is clearly relevant to determining the reasonableness of the hourly rates charged for work performed in prosecuting the underlying Section 1983 claim. As set forth more fully below, the Sixth Circuit has held that the reasonableness of an hourly rate is ordinarily determined based upon what an attorney in the relevant legal community "can reasonably expect" to receive for the work. Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 618 (6th Cir. 2007) (citations omitted). Here, given the nature of the claim at issue, any attorney in the Cleveland legal market who undertakes the representation of a "prisoner" to prosecute a Section 1983 claim would "reasonably expect" to collect the hourly rates set by the PLRA.  Thus, as in *Melendez*, the Court should use the PLRA's hourly rates in determining the reasonableness of the hourly rates requested by Plaintiff's counsel in this case.  Id., 2023 WL 3073639, at *2.

10

In their Fee Petition, Plaintiff's attorneys argue that they should be entitled to charge $500 and $425 per hour because their contingent fee agreement with James set forth hourly rates of $500 and $425. (Doc.#61, Fee Petition, pg. 3, PageID#1467). In making this argument, however, Plaintiff's attorneys have failed to submit a copy of their contingency fee agreement with James, instead relying exclusively upon the Declarations of Ashlie Sletvold and Paul Flowers to set forth the alleged rates. (Doc.#61-2, Sletvold Decl. ¶ 8, PageID#1498); (Doc.#61-3, Flowers Decl. ¶ 18, PageID#1520). While Flowers admits that the contractual rates are "by no means dispositive," his opinion nevertheless focuses entirely upon whether the <u>contractual</u> rates are reasonable. (*Id.*)

This is an improper method for determining the reasonableness of hourly rates requested by Plaintiff in this case because it completely ignores the fact that the PLRA sets forth the hourly rates that an attorney can reasonably expect to collect from a public entity in prosecuting a Section 1983 claim on behalf of a "prisoner." While Section 1997e(d)(4) provides that "[n]othing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title," this statutory exception does not apply because there is no evidence submitted by Plaintiff to show that the fees at issue have been paid by James. Rather, given the admission that James has signed a contingent fee agreement, it is likely, as in *Thomas*, that the time records kept by Peiffer Wolf were prepared "for the primary purpose of passing the bill to the opposing party." *Id.*, 421 F. Supp.3d at 498, n.3. Thus, since Plaintiff's attorneys knew or should have known at the outset of the litigation that any fees collected from the County would be subject to the PLRA, it is the PLRA's hourly rate – not the contingency fee agreement – that should be controlling in determining the reasonableness of the hourly rates charged to the County in this case.

11

### B. Plaintiff's Hourly Rates Far Exceed The Median Hourly Rates Charged By Attorneys In Suburban Cleveland With Similar Years Of Experience.

Plaintiff's hourly rates are also unreasonable because they far exceed the median hourly billing rates set forth in the 2019 OSBA survey, which was attached to the Fee Petition and is often used by district judges in the Northern District of Ohio in determining the "prevailing market rate" that "is customarily paid in the community to attorneys of reasonably comparable skill, experience, and reputation." *Rohaley and Sons Automotive, Inc.*, 2022 WL 18863788, at *2 ("Courts within this district have historically turned to the Ohio State Bar Association's study of attorney fees for guidance on determining reasonable attorney's fees") (citing cases).

Here, Plaintiff's counsel have submitted the 2019 OSBA survey in support of their fee petition, but they completely ignore the median hourly rates set forth in that survey. (Doc.#61-3, 2019 OSBA Survey, pp. 44-45, PageID#1527-1528). Instead, they rely upon the OSBA survey to show that their contractual rates are "reasonable" because they allegedly fall within the 95th or 75th percentiles of the relevant categories. This is improper. Under the applicable case law, the "appropriate rate" for an attorney fee award is "not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter*, 510 F.3d at 618 (emphasis added); *see also Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 Fed.Appx. 498, 502 (6th Cir.2006) ("Even if it would be reasonable to award [plaintiff] $370 per hour, the record supports the district court's conclusion that $200 per hour is sufficient to encourage competent lawyers in the relevant community to undertake legal representation"). Thus, in examining the reasonableness of hourly rates, the courts generally focus on the "median" hourly rate – not the 95th percentile. *See Rohaley and Sons Automotive*, 2022 WL 18863788, at *2 (applying $220 hourly rate for partners and $200 hourly rate for associates based upon the median hourly rates in OSBA 2019 survey); *Poskovic*, 2019 WL 6727098, at *3 (rejecting

12

argument that plaintiff's attorneys should be paid hourly rates in the 95th percentile or at a higher-than-average rate that only 13.2% of the attorneys with similar years of experience received); *see also Auto Alliance v. U.S. Customs Service*, 155 Fed.Appx. 226, 228 (6th Cir.2005) (affirming $200 per hour flat rate based upon median hourly rates in State Bar of Michigan's market surveys).

Here, a review of the 2019 OSBA market survey attached to Plaintiff's fee petition shows that the "median" hourly rate for attorneys with 11 to 15 years and 16 to 25 years of practice is $250 per hour. (Doc.#61-3, 2019 OSBA Survey, pg. 44, PageID#1527). Similarly, the median hourly rate for office locations in Suburban Cleveland is $250 per hour, and the median hourly rate for attorneys in a law firm of 3-6 lawyers and 21 to 50 lawyers is $250 per hour.[1] (*Id.*) Moreover, the median hourly rate for general civil trial practice is also $250 per hour, and the hourly rate for municipal/public entity law is $200 per hour. (*Id.* at pg. 45, PageID#1528).[2] Thus, given that the "appropriate rate" for attorney fee awards ultimately turns upon what rate would be "sufficient" in the relevant market "to encourage competent representation," the OSBA survey only further confirms that Plaintiff's hourly rates of $500 and $425 are excessive because they significantly exceed the median rate of $250 per hour that is charged by attorneys with similar years of experience in the relevant legal market. Accordingly, for this additional reason, the Court

---

[1] According to the information set forth in their Declarations and other publicly available information on the Peiffer Wolf website, Ashlie Sletvold and Jessica Savoie are both members of a three-person office located on SOM Center Road in Suburban Cleveland that consists of a partner with 17 years of experience (Sletvold), an "of counsel" attorney with 11 years of experience (Savoie), and an associate, Marilyn Eble. *See* https://www.peifferwolf.com/attorneys/. The firm has a total of 26 attorneys nationwide, but only 4 attorneys in Ohio. *Id.*

[2] We note that the Plaintiff counsel's hourly rates also exceed the hourly rates charged by Plaintiff's expert, Paul W. Flowers, who has been practicing for over 30 years and charged $350 per hour for his work on this case. Indeed, whenever he performs work on behalf of Cuyahoga County, Mr. Flowers only charges $250 per hour, which is in line with the prevailing market rates for "municipal/public law" in the 2019 OSBA survey. (*See* Doc.#62-2, Declaration of Gregory Popovich, Cuyahoga County Court Administrator, ¶ 5, PageID#1553).

13

should significantly reduce the hourly rates charged by Sletvold and Savoie in this case. *See, e.g., Lamar Advertising Co.*, 178 Fed. Appx. at 502 (affirming reduction in hourly rates from $370 to $200 because $200 was sufficient to "encourage competent lawyers in the relevant community to undertake legal representation").

**IV.    THE COURT SHOULD APPROVE AN ACROSS-THE-BOARD REDUCTION ON ACCOUNT OF THE TOP-HEAVY BILLING BY PLAINTIFF'S COUNSEL.**

As previously discussed, the Fee Petition is also excessive because all of the work was performed by a partner or "of counsel" attorney at substantially higher rates than would be charged by an associate. In general, "[p]urchasers of legal services generally require that work be performed by the person at the lowest billing rate who is competent to perform the service. This usually results in a greater expenditure of associate time, while partners perform only those tasks that they alone can do." *Fair Housing Ctr. of Southwest Mich. v. Hunt*, No. 1:09-CV-593, 2013 WL 5719152, *15 (W.D. Mich. Oct. 21, 2013). Thus, where, as here, the billing is "top heavy" because most of the work was <u>not</u> performed by associates who bill at a lower hourly rate, the federal courts will reduce the total attorney fee award by an across-the-board percentage in order to account for this "top-heavy billing." *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 596 (6th Cir. 2008) (affirming 25% across-the-board reduction "to account for top-heavy billing by partners for work that could have been performed by associates"); *Fair Housing Center of Southwest Mich.*, 2013 WL 5719152, at *17-18 (granting 60% reduction in partner hours to account for "top-heavy" billing of work that could have been performed by associates).

Here, Plaintiff's Fee Petition completely ignores this top-heavy billing structure altogether and instead was primarily focused on justifying why Savoie, who has 11 years of experience and is designated as "of counsel" at her firm, should be paid a higher rate than an associate. (Doc.#61-1, Savoie Decl. ¶ 13, PageID#1482). <u>This argument makes our point.</u> Here, the fees charged by

14

Plaintiff's attorneys are, by definition, "top heavy" because, by their own admission, Savoie is not an associate, and thus she is requesting an hourly rate that is <u>substantially</u> <u>higher</u> than an associate's hourly rate.  (*Id.*)  Accordingly, as in the cases set forth above, the Court should take this top heavy billing structure into account and make an "across-the-board reduction" in the entire fee award.

## **CONCLUSION**

For all of these reasons, the Court should deny or substantially reduce the fee request in the following manner:

(1) Deny or substantially reduce the fees and expenses incurred for "fee entitlement," "fee petition," "fee petition reply brief" and "expert fee expenses."  This will reduce the request from $45,977.00 to $13,712.50.

(2) Reduce the hourly rates of $500 and $425 per hour to the PLRA hourly rate of $237, which is the applicable rate for 2022 when the motion to compel was filed, and would reduce the request from $13,712.50 to $7,512.90, or in the alternative, reduce the rates to $250 per hour, which would reduce the request from $13,712.50 to $7,925.00.

(2) If the Court does not apply the PLRA rate or the OSBA median rates, then it should, at a minimum, impose a 50% across-the-board reduction to account for top-heavy billing, which would reduce the request to $6,856.25.

By so doing, the Court can reduce the total award of fees from the grossly excessive request for $45,977.50 to a more reasonable award in the range of $6,000-$8,000, which is more in line with the attorney fee awards in other similar Rule 37(a) cases involving a single motion to compel.

Respectfully submitted,

*/s/ Stephen W. Funk*
Stephen W. Funk (0058506)
ROETZEL & ANDRESS, LPA
222 S. Main Street, Suite 400
Akron, Ohio 44308
Telephone:  330.849.6602
E-mail:  sfunk@ralaw.com

*Attorney for Defendant Cuyahoga County*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of May, 2023, a copy of the foregoing Response was electronically filed with the Court. Notice of this filing was sent to all counsel of record via the Court's electronic filing system.

<i>s/ Stephen W. Funk</i>